**Melanie D. ISRALSKY, Appellee,**

v.

**Jay S. ISRALSKY, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 4, 2002.

Filed April 28, 2003.

---

1. Although some jurisdictions have viewed *Leasure* as embracing the complete justification rule, *see, e.g., Halliwell v. Halliwell,* 326 N.J.Super. 442, 741 A.2d 638, 645 (1999); *In re Marriage of Thurmond,* 265 Kan. 715, 962 P.2d 1064, 1070–71 (1998), others have more appropriately categorized it as adopting the one factor rule. *See In re Marriage of Burbridge,* 317 Ill.App.3d 190, 250 Ill.Dec. 510, 738 N.E.2d 979, 982 (2000); *In re Marriage of Hamilton,* 857 P.2d 542, 544 (Colo.Ct.App. 1993).

1. Courts have the independent authority to discern public policy in the absence of legislation. *Shick v. Shirey,* 552 Pa. 590, 716 A.2d 1231, 1237 (1998). "It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring." *Lurie v. Republican Alliance,* 412 Pa. 61, 192 A.2d 367, 370 (1963) (quoting *Mamlin v. Genoe,* 340 Pa. 320, 17 A.2d 407, 409 (1941); *Commonwealth ex rel. Fox v. Swing,* 409 Pa. 241, 186 A.2d 24, 27 (1962) (Bell, J., concurring)).

Melaine S. Rothey, Pittsburgh, for appellant.

Samuel Reich, Pittsburgh, for appellee.

BEFORE: HUDOCK, TODD, and GRACI, JJ.

OPINION BY GRACI, J.:

¶1 Appellant, Jay S. Isralsky, ("Husband") appeals the trial court's order of equitable distribution awarding sixty percent of the marital estate to Appellee, Melanie D. Isralsky, ("Wife"), also granting Wife's request for alimony and ordering Husband to pay $20,000 of Wife's counsel fees. Upon review of the record we affirm in part and reverse in part, remanding with instructions.

## I. FACTUAL AND PROCEDURAL HISTORY

¶2 The relevant facts and procedural history, as aptly stated by the trial court, are as follows.

The parties to this action were married on February 22, 1981, and separated on or about November 23, 1997. The Amended Notice of Appeal confirms a Divorce Decree was not entered until

February 27, 2002. During the marriage, three boys were born who at the time of trial were 17 (Brandon), 14 (Andrew), and 11 (Glen). Husband is 47 years old, born on August 14, 1954, and Wife is 46 years old, born on September 19, 1955.

Wife attended Queens College for approximately four years, but received no degree. She worked in the early years of the parties' marriage, but between 1984 and 1996 she was a stay-at-home mother to raise the three children. She returned to employment in 1996 and at the time of trial was employed as a coordinator at Primary Physicians Research & Pharmaceutical making $12.44 per hour for a 24–28 hour per week job. Since the date of separation, Wife has been the primary physical custodian of the three boys and Father has had extremely limited, and for most of the time, virtually no partial custody or visitation during the last four and one-half years.

Husband now lives with his sister in Alameda, California. He is presently employed at Williams–Sonoma, Inc. at an annual base salary of approximately $80,000 plus a bonus which may be between 10 percent and 30 percent of his base salary. From sometime in 1985 or 1986, until March 31, 1995, he was employed by OshKosh B' Gosh. The termination of his employment there resulted in a lawsuit, which brought a settlement of approximately $375,000.00 of which $75,000.00 went directly to his counsel. The initial net payment to Husband of $204,793.20 was made in June 1998. The proceeds of the settlement were separated into two joint accounts, *and Wife's name was not on either one of them.* A subsequent payment in 1999 was placed into an escrow account. The disposition of the proceeds of this settlement caused protracted litigation between the parties as Husband used most, if not all, of the funds to repay loans to his sister and mother. Wife contested the repayment of these loans and presented a Petition for Special Relief to the Court in 1999. The matter was tried before this Court for two days, and we found that family members of Husband had in fact loaned substantial funds to Husband to meet marital obligations of the parties between April 1, 1995 and June 1998. There were Promissory Notes including 10 percent interest on the principal amounts, to corroborate these loans. Wife had never signed any of these notes and she denied any knowledge of them. Further, the balance of the proceeds from the settlement, which had been held in an escrow account, were released, by Order of Court, directly to the Internal Revenue Service to satisfy or partially satisfy any remaining federal tax obligation as the result of the settlement of the claim. Even though Wife was not a signator to any of the Promissory Notes, and despite the fact that the interest rates charged by family members to Husband were higher than one might normally expect to see between family members, we felt constrained to find that the loans had been made by his mother and sister in order to satisfy the ongoing expenses of the parties. It was clear these expenses far exceeded any other available income to them during the period in question as Husband was unemployed for a long period of time, received unemployment and then had minimal employment with one or two firms.

Opinion, 5/23/02, at 1–3. Following a two-day trial on the economic issues, on November 20, 2001, the trial court issued Findings of Fact, Conclusions of Law and an Order of Court setting forth, in detail, its decision with regard to the issues of alimony, child support, modification of child support and alimony *pendente lite,*

equitable distribution and counsel fees. A Notice of Appeal was filed on December 20, 2001 and an Amended Notice of Appeal was filed on February 28, 2002.[1]

¶ 3 Husband raises on appeal, the following issues for our consideration.

I. The trial court erred with regard to the valuation of the marital estate in several particulars.

II. The trial court erred in ordering husband to pay an additional $400/month in child support based upon the "mortgage adjustment" set forth in Rule 1910.16–6(E), when such provision is inapplicable after theh [sic] entry of a divorce decree.

III. The trial court erred in granting wife's petition for modification of alimony *pendente lite* and child support in that it improperly assessed husband with a gross income of $80,000/year for the period of April 1999 through August 2001.

IV. The trial court erred in awarding alimony to wife in several particulars.

V. The trial court erred in calculating both husband's income and wife's income for purposes of determining the appropriate amount of support pursuant to the child support guidelines.

VI. The trial court erred in awarding sixty (60%) percent of the marital estate to wife without proper consideration of all factors set forth in 23 Pa.C.S.A. Section 3501, including the tax consequences.

VII. The trial court erred in awarding wife $20,000 in counsel fees.

---

1. Because the appeal was taken from an order of equitable distribution before a decree in divorce had been entered, the appeal was interlocutory. *See Campbell v. Campbell*, 357

Appellant's Brief, at i-ii. (We will address these claims in order.)

## II. DISCUSSION

### A. Equitable Distribution—Valuation of the Marital Estate

¶ 4 Husband begins by arguing in his brief that the trial court made four different errors in its valuation of the marital estate. Each allegation of error involved an item of the marital estate over which there was some conflict in testimony and evidence as presented by each party at trial. Each allegation involved a determination of the credibility of the evidence and required the exercise of judicial discretion.

¶ 5 Our role in reviewing awards of equitable distribution is well settled.

The trial court has broad discretion in fashioning equitable distribution awards and we will overturn an award only for an abuse of that discretion. *Oaks v. Cooper*, 536 Pa. 134, 638 A.2d 208 (1994); *Hovis v. Hovis*, 518 Pa. 137, 541 A.2d 1378 (1988); *Gaydos v. Gaydos*, 693 A.2d 1368 (Pa.Super.1997)(en banc). The Divorce Code states that the trial court

Shall...equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such proportions and in such manner as the court deems just after considering all relevant factors....

23 Pa.C.S. § 3502(a). In assessing the propriety of an equitable distribution scheme, our standard of review is whether the trial court, by misapplication of the law or failure to follow proper

Pa.Super. 483, 516 A.2d 363 (1986). On February 27, 2002, the trial court entered a final decree in divorce and the appeal is now properly before this Court.

legal procedure, abused its discretion. *Johnson v. Johnson*, 365 Pa.Super. 409, 529 A.2d 1123 (1987). "Specifically, we measure the circumstances of the case, and the conclusions drawn by the trial court therefrom, against the provisions of 23 P.S. § 402(d) [now 23 Pa.C.S. § 3502(a) ] and the avowed objectives of the Divorce Code, that is, 'to effectuate economic justice between the parties ... and insure a fair and just determination of their property rights.' 23 P.S. § 102(a)(6) [now 23 Pa.C.S. § 3102(a)(6) ]." *Hutnik v. Hutnik*, 369 Pa.Super. 263, 535 A.2d 151, 152 (1987). *Middleton v. Middleton*, 812 A.2d 1241, 1247 (Pa.Super.2002) (footnote omitted). The law is also well settled that the trial court can accept all, some or none of the submitted testimony in determining the value of marital property. *Kohl v. Kohl*, 387 Pa.Super. 367, 564 A.2d 222 (1989) (*aff'd* 526 Pa. 263, 585 A.2d 463 (1991)). With these guidelines in mind, we will now review the trial court's distribution order. Husband first argues that:

(a) The trial court erred in assessing Husband with $3,042 from the joint PNC Checking Account when such funds were used to pay marital debt and/or household expenses after Husband moved from the marital residence.

Appellant's Brief, at 11. The trial court found that the, "PNC joint checking account ... had a separation balance of $4542. The testimony established that wife made a cash withdrawal of $1,500 the day after the separation, and that husband took the remaining $3,042 and apparently deposited those funds into a bank account in New York." Findings of Fact, 11/20/01, at 2, ¶ 5. The trial court also explained that,

the evidence led us to believe that Husband wrote a check payable to his mother on the account in that amount three days after separation payable to his mother.... [T]hat same day his mother wrote a check to him in that same amount and a Promissory Note was executed by him to his mother. We believed that none of these funds were utilized to pay marital debt or household expenses.

Opinion, 5/23/02, at 3–4. This finding is supported by the record, and we find no abuse of discretion.

■ ¶ 6 Husband's second assertion of error by the trial court regarding the valuation of the marital estate stated as follows:

(b) The trial court erred in including the $12,000 proceeds from the sale of the Porsche in the marital estate and awarding Wife $11,191 of said proceeds when the undisputed evidence indicated that said proceeds had been used by Husband prior to trial to pay a portion of the federal tax liability on the monies from the OshKosh B'Gosh settlement and to pay a lump sum to the bank holding the parties' overdue home equity line of credit.

Appellant's Brief, at 13. The trial court found that,

[husband] testified that he sold the vehicle to his sister's friend and/or roommate. The proceeds of the sale of this Porsche had been ordered to be placed in an escrow account by this Court, and the evidence established that this never occurred. All of the evidence presented by Husband in this regard was deemed not to be credible and therefore we included the proceeds in the marital estate and distributed a portion of same to Wife.

Opinion, 5/23/02, at 4. This finding is supported by the record, and we find no abuse of discretion.

¶ 7 Husband's next assertion of error by the trial court regarding the valuation of the marital estate is that:

(c) The trial court erred by including $28,490 in rental income from the New York co-op apartment in the marital estate as cash without deducting from said rental income the corresponding rental expenses, including the mortgage on the rental property, the co-op fees on the rental property and the cost of repairs and renovations to the rental property.

Appellant's Brief, at 15. The trial court found that,

[w]ith regard to the $28,490.00 in rental income from a New York co-op apartment which the parties owned during the marriage, this sum represented rental income at the rate of $770.00 per month from the date of separation up to and including approximately September 2000. Wife saw none of the proceeds. The evidence presented by Husband with regard to income and expenses, again all of which we viewed with great suspicion as he was in complete control of the asset, was inconsistent in many regards.

Opinion, 5/23/02, at 4. Again, we find that the record supports the trial court's finding and we see no abuse of discretion.

¶ 8 Lastly, Husband asserts the following error by the trial court in the valuation of the marital estate:

(d) The trial court erred in accepting Wife's value for the household furnishings in the amount of $500.

Appellant's Brief, at 18. Husband argued that it is impossible to believe that a nine-room house would be furnished with only $500 worth of furniture, even if it were used furniture. He estimated the value of the furnishings to be $5000. *Id.* The trial court found the, "Wife's testimony in this regard to be more credible as she was well familiar with the items of personalty, as

well as their condition." Opinion, 5/23/02, at 5. Again the decision of the trial court, grounded, as it is, on a credibility determination, is supported by the record and we find no abuse of discretion.

**B. Child Support—Mortgage Adjustment**

¶ 9 Husband next asserts that it was error for the trial court to provide for a "mortgage adjustment" with regard to the child support order. In child support cases, our standard or review is as follows:

The amount of a support order is largely within the discretion of the trial court, whose judgment should not be disturbed on appeal absent a clear abuse of discretion. An abuse of discretion is not merely an error of judgment, but rather a misapplication of the law or an unreasonable exercise of judgment. A finding that the trial court abused its discretion must rest upon a showing by clear and convincing evidence, and the trial court will be upheld on any valid ground. *Kessler v. Helmick*, 449 Pa.Super. 113, 672 A.2d 1380, 1382 (1996) (quoting *Griffin v. Griffin*, 384 Pa.Super. 188, 558 A.2d 75, 77 (1989) (*en banc*)). For our purposes, "an abuse of discretion requires proof of more than a mere error of judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice or partiality."

*Portugal v. Portugal*, 798 A.2d 246, 249 (Pa.Super.2002) (citations omitted). Mindful of our standard of review in cases of child support, we will now review Husband's assertion of error regarding the mortgage adjustment. Applying Pa. R.C.P. 1910.16–6(e), the trial court ordered Husband to pay an additional $400 per month in child support. Pa.R.C.P. 1910.16–6(e) provides in pertinent part:

**Mortgage Payment.** The guidelines assume that the spouse occupying the marital residence will be solely responsible for the mortgage payment, real estate taxes and homeowners' insurance.... If the obligee is living in the marital residence and the mortgage payment exceeds 25% of the obligee's net income (including amounts of spousal support, APL and child support), the court may direct the obligor to assume up to 50% of the excess amount as part of the total support award....

*Id.* The trial court found that because the mortgage payment exceeded 25 percent of the Wife's net income including alimony and child support,[2] pursuant to Pa.R.C.P. 1910.16–6(e) the trial court directed Husband to pay Wife a mortgage adjustment of $400, or 50 percent of the excess amount as part of the total support award. Findings of Fact, Conclusions of Law and Court Order, 11/20/01, ¶ 16. Husband argues that once a divorce decree is rendered, the mortgage adjustment is inapplicable. Appellant's Brief, at 20–22. We disagree.

¶ 10 The Pennsylvania Supreme Court is required by statute to develop guidelines for child and spousal support. 23 Pa. C.S.A. § 4322(a). The statute clearly indicates that the guidelines are applicable to both child and spousal support. *Id.* Rules of Civil Procedure 1910.16–1 through 1910.16–7, set forth the guidelines as promulgated by our Supreme Court. Rule 1910.16–6(e) simply provides, "some uniformity and certainty as to what constitutes an unusually high mortgage payment that may justify an upward adjustment to the basic support obligation." Pa.R.C.P.

1910.16–6(e), Explanatory Comment— 1998. It is well established in Pennsylvania that mortgage payments are to be included when calculating child support. *Shutter v. Reilly,* 372 Pa.Super. 251, 539 A.2d 424, (1988) ("Among the bare necessities of a child's life is a home"); *Shapera v. Levitt,* 260 Pa.Super. 447, 394 A.2d 1011 (1978) (reasonable household expenses are necessarily included in a support order). Our Court reaffirmed this position in *Lampa v. Lampa,* 371 Pa.Super. 1, 537 A.2d 350 (1988) when it stated, "that in reaching the determination as to the inclusion of mortgage payments and household utilities in calculating support, the court is to be cognizant of the fact that a child's station in life is dependent at least in part upon where the child lives." *Id.* at 353.

¶ 11 The trial court explained that,

[t]he hope was to keep the children in the residence and in the same school district for as long as possible. Accordingly, we either could have increased the alimony order to accommodate her needs, or apply the mortgage deviation. We chose the latter as the most equitable under all the circumstances of this case. We believe this was in the exercise of reasonable discretion.

Opinion, 5/23/02, at 10. We agree.

C. Alimony *Pendente Lite,* Child Support and Earning Capacity

¶ 12 Husband's next claim of error concerns the trial court's grant of Wife's petition for modification of alimony *pendente lite* and child support by improperly assessing Husband with a gross income of $80,000 per year for the period of

---

**2.** The mortgage payment was $1,550.00 per month. Defendant's Proposed Distribution, 11/7/01, Exhibit F. The court found Wife's net income to be $1062. The court ordered Husband to pay $750 per month in alimony and $1167 in child support, providing Wife with a total income of $2979. Findings of

Fact, Conclusions of Law and Court Order, 11/20/01, ¶ 16. 25 percent of $2979 is $745. The difference between the monthly mortgage payment of $1550 and 25 percent of Wife's monthly income($745) is $805. 50 percent of $805 is $402.50.

April 1999 through August 2001. "Our standard of review for awards of alimony *pendente lite* is well settled. If an order for alimony *pendente lite* is bolstered by competent evidence, the order will not be reversed absent an abuse of discretion by the trial court." *Jayne v. Jayne,* 443 Pa.Super. 664, 663 A.2d 169, 176 (1995) (citations omitted). Our Court has also held that,

> Where a party willfully fails to obtain appropriate employment, his or her income will be considered to be equal to his or her earning capacity. Pa.R.C.P. 1910.16-2(d)(4). A determination of earning capacity must consider the party's age, education, training, health, work experience, earnings history, and child care responsibilities. *Id.; Kersey v. Jefferson,* 791 A.2d 419, 423 (Pa.Super.2002). *Accord DeMasi v. DeMasi,* 366 Pa.Super. 19, 530 A.2d 871, 877 (1987) (holding that "[a] parent's ability to pay support is determined primarily by financial resources and earning capacity.... The obligation of support, then, is measured more by earning capacity than by actual earnings.")

*Portugal,* 798 A.2d at 250. Husband argues that during this time period he was operating his own business while attempting to find other employment. He claimed to be making substantially less than $80,000 per year until he attained a position with Williams–Sonoma in California in August, 2001. Appellant's Brief, at 25–26. However, the trial court, "did not believe Husband's testimony and evidence with regard to his search for employment and believed that at all times relevant he was engaging in a course of conduct designed to reduce his earnings/earning capacity so as to minimize his financial obligation to Wife and his children...." Opinion, 5/23/02, at 6. The record supports the trial court's findings and we find no abuse of discretion. *See* Pa.R.C.P. 1910.16-2(d); *Neil v. Neil,* 731 A.2d 156 (Pa.Super.1999)

(held trial court free to base initial support order on husband's previous earnings since reduction in income was voluntary and attempt to avoid duty of support).

## D. Alimony

 ¶ 13 Husband next asserts that it was error to award alimony to Wife because she failed to establish that alimony was necessary to meet her reasonable needs and the trial court further erred by not including alimony payments in the calculation of Wife's income for child support calculation. Appellant's Brief, at 27–28.

 ¶ 14 As in cases of child support and alimony *pendente lite,* our standard of review for questions regarding alimony is abuse of discretion. *Simmons v. Simmons,* 723 A.2d 221 (Pa.Super.1998). The law is also clear that,

> "The purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met." *Twilla v. Twilla,* 445 Pa.Super. 86, 664 A.2d 1020, 1022 (1995) (quotation omitted). In determining the nature, amount, duration and manner of payment of alimony, the court must consider all relevant factors, including those statutorily prescribed for at 23 Pa.C.S.A. § 3701, Alimony, (b) Relevant Factors (1)-(17). "'Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay.'" *Twilla, supra,* 664 A.2d at 1022 *quoting Perlberger v. Perlberger,* 426 Pa.Super. 245, 626 A.2d 1186, 1203 (1993), *appeal denied,* 536 Pa. 628, 637 A.2d 289 (1993).

*Plitka v. Plitka,* 714 A.2d 1067, 1069 (Pa.Super.1998). The trial court found,

that Wife lacked sufficient property to meet her needs and was unable to support herself through appropriate employment. There was credible evidence that Wife required gifts from her family members post-separation in order to keep her children in clothes, housing, and food. Further, her budget reflected an average monthly expense of approximately $4,000.00. In addition to the needs, we viewed the relative earnings and earning capacities of the parties, the duration of the marriage, the reduction of her earning power by reason of her serving as the custodian of minor children, and because economic justice could not be achieved solely through equitable distribution, we found the award to be appropriate.... Further, for purposes of establishing an appropriate child support order we are permitted, in our discretion, to deduct alimony from Husband and not include in Wife's income calculation. Pa.R.C.P. 1910.6–2(a)(7).

Opinion, 5/23/02, at 7. We again find the trial court's findings supported by the record and no abuse of discretion.

■■■ ¶ 15 Husband's last claim of error by the trial court regarding alimony concerned the contingency that alimony continue, "until the youngest child of the parties, Glenn Isralsky, graduates from high school or turns 18 years of age, whichever event occurs last." ... Appellant's Brief, at 29; Order, 11/20/01, ¶ 15. Husband argues that because the Internal Revenue Service views this type of award as "disguised child support" and therefore, not deductible as alimony, the alimony award should be overturned. Appellant's Brief, at 29–30.

¶ 16 The Internal Revenue Code provides in pertinent part:

(a) General Rule.—Gross income includes amounts received as alimony or separate maintenance payments.

. . .

(d) Payments to support children.-

(1) In general.—Subsection (a) shall not apply to that part of any payment which the terms of the divorce of separation instrument fix (in terms of an amount of money or a part of a payment) as a sum which is payable for the support of children of the payor spouse.

(2) Treatment of certain reductions related to contingencies involving child.—For purposes of paragraph (1), if any amount specified in the instrument will be reduced—

(A) on the happening of a contingency specified in the instrument related to a child (such as attaining a specified age, marrying, dying, leaving school, or a similar contingency), or

(B) at a time which can clearly be associated with a contingency of a kind specified in subparagraph (A),

an amount equal to the amount of such reduction will be treated as an amount fixed as payable for the support of children of the payor spouse.

26 U.S.C.A. § 71.

¶ 17 The Internal Revenue Code also provides that:

(a) **General rule.**—In the case of an individual, there shall be allowed as a deduction an amount equal to the alimony or separate maintenance payments paid during such individual's taxable year.

[(b) **Alimony or separate maintenance payments defined.**]—For purposes of this section, the term "alimony or separate maintenance payment" means any alimony or separate maintenance payment (as defined

in section 71(b)) which is includible in the gross income of the recipient under section 71.

26 U.S.C.A. § 215(a)-(b).

¶ 18 Husband is correct in his analysis, that such conditional alimony payments would be treated as child support by the Internal Revenue Service, and that the IRS would disallow any deduction from income for the $750 per month payments. *See Roosevelt v. Commissioner of Internal Revenue*, 1995 WL 520234 (U.S.Tax Ct.); 8 Mertens Law of Fed. Income Tax'n § 31A:56. This court has stated previously, "... it is clear that a spouse's present expendable income, potential earning power, and property and financial resources rather than his net income, determine the reasonableness of a support order." *Diament v. Diament*, 816 A.2d 256, 281 (Pa.Super.2003) (citation omitted). Since Husband's tax liability would increase as a result of his alimony payments being construed by the IRS as child support under 26 USCA § 71, his "expendable income" would be reduced accordingly. Expendable income, in conjunction with potential earning power, property and financial resources determine the reasonableness of a support order. *Id.* (citation omitted). "Fashioning support awards without taking into account their tax consequences amounts to making calculations based on false data." *Id.* (citation omitted). Based on our review of the record it appears that the trial court intended that Husband be permitted to deduct the $750 alimony payment from Husband's income for Federal income tax purposes. We, therefore, remand the award of alimony for appropriate clarification pursuant to § 71 of the Internal Revenue Code, regarding the duration of the award.

E. Income Calculation of Wife and Husband

¶ 19 Husband next contends that the trial court erred by failing to assess Wife with an appropriate earning capacity. Husband argues that Wife has an earning capacity between $18,000 and $40,000 per year, greater than her actual earnings of approximately $14,400 per year working on less than a full time basis. Appellant's Brief, at 31; Findings of Fact, 11/20/01, ¶ 11. The trial court stated,

[w]e rejected the evidence from Husband's vocational expert and found, based upon the credible evidence presented by Wife, that she was working to her full capacity and would continue to do so while she remained *essentially* the sole custodian of the three boys. To assign more hours to Wife would have required additional expense for childcare and thus more financial support from Husband.

Opinion, 5/23/01, at 8. It is important to remember that "[this Court] is not free to usurp the trial court's duty as the finder of fact." *Nemoto v. Nemoto*, 423 Pa.Super. 269, 620 A.2d 1216, 1219 (1993) (citing *Edelstein v. Edelstein*, 399 Pa.Super. 536, 540, 582 A.2d 1074, 1076 (1990)). As this Court has stated on prior occasions, "[a]ppellate courts are becoming more reluctant to substitute themselves as super-support courts when they have not had the opportunity to see and hear the witnesses and so determine credibility." *Weiser v. Weiser*, 238 Pa.Super. 488, 362 A.2d 287, 288 (1976). We find no abuse of discretion.

¶ 20 Next Husband asserts as error that the trial court calculated his net income using the state income rate for Pennsylvania and the minimum local income tax rate (3.8% total), instead of the state income tax rate for California (9.3%). The trial court premised this decision on the fact that at the time of the hearing,

Husband had only been employed in California for two or three months and had not yet earned the threshold amount of $35,826.00 or more that would place Husband in the 9.3% bracket. The trial court further reasoned that because it did not have the evidence as to which rate to use, the use of any rate other than the 3.8% Pennsylvania rate would have been speculation. According to the trial court, the worst case scenario would require Husband to pay an extra $91 per month for the last four months of 2001. The trial court stated that it,

> was certainly not error for us to assign his earning capacity of $80,000.00 per year retroactive to February 1999.... Similarly, given the potential for him to earn more than $80,000.00 through the incentive plan before his eldest son is emancipated, is within the realm of probability that would not require a reversal of this potentially minor error of $91.00 per month.

Opinion, 5/23/01, at 9–10. While we agree with the trial court that its assignment of an earning capacity of $80,000.00 retroactive to 1999 was correct, we find that the trial court was in error when in applied the Pennsylvania state income tax rate of 3.8% to income earned after Husband began his employment in California, in July, 2001. If the required amount of income for inclusion in California's state income tax bracket of 9.3 percent is $35,826.00, Husband should have met that requirement since he was employed in California for the last six months of 2001, at an annual salary of $80,000. Therefore, we find that the trial court erred in calculating Husband's net income and direct the trial court, on remand, to recalculate Husband's income by utilizing the California state income tax rate of 9.3% beginning in July, 2001.

### F. Equitable Distribution of the Marital Estate

¶ 21 Husband next argues that it was error for the trial court to award 60 percent of the marital estate to Wife without proper consideration of all factors set forth in § 3501 of the Divorce Code, including the tax consequences. Appellant's Brief, at 34. Husband argues that rather than effectuating economic justice as required, see *Downey v. Downey*, 399 Pa.Super. 437, 582 A.2d 674 (1990), the trial court has, "left Husband virtually destitute." Appellant's Brief, at 35. In making its decision regarding equitable distribution, the trial court must consider at least the eleven factors enumerated in 23 Pa. C.S.A. § 3502(a). As this Court has stated previously,

> [T]here is no simple formula by which to divide marital property. The method of distribution derives from the facts of the individual case. The list of factors [in the Code] serves as a guideline for consideration, although the list is neither exhaustive nor specific as to the weight to be given the various factors. Thus, the court has flexibility of method and concomitantly assumes responsibility in rendering its decisions.

*Fonzi v. Fonzi*, 430 Pa.Super. 95, 633 A.2d 634, 638 (1993) (quoting *Semasek v. Semasek*, 331 Pa.Super. 1, 11, 479 A.2d 1047, 1052 (1984) (*rev'd. on other grounds*, 509 Pa. 282, 502 A.2d 109 (1985))). This Court has upheld awards of 60 percent and greater of the marital assets. *Malseed v. Malseed*, 388 Pa.Super. 214, 565 A.2d 453 (1989) (60 percent award upheld); *Teribery v. Teribery*, 357 Pa.Super. 384, 516 A.2d 33 (1986) (award of 72 percent of the marital assets to Wife upheld given 31 year marriage, homemaker status of wife, raising of six children, wife's emotional problems and lack of job skills and train-

ing, and husband's good health and steady employment).

¶ 22 The trial court's opinion refers to ¶ 12 of its Findings of Fact and Conclusions of Law, 11/20/01, which states that,

Given the factors set forth in the Divorce Code, including, but not limited to the length of the marriage, the needs of the parties, the potential of each party to obtain additional income in the future, the current earning/earning capacity of the parties and that wife will be serving as the custodian of the three dependent minor children, the court finds that it is appropriate to award wife 60 percent of the marital estate and husband 40 percent of the marital estate.

¶ 23 Our review of the record indicates appropriate consideration of the Section 3502(a) factors and no abuse of discretion in the trial court's distribution of the marital estate.

G. Counsel Fees

▮▮▮▮▮▮▮ ¶ 24 Finally, Husband complains that the trial court erred by awarding Wife $20,000 in counsel fees. Our review of the grant of counsel fees is limited however, and we will reverse only upon a showing of plain error. *Diament*, 816 A.2d at 270.

Plain error is found where the decision is based on factual findings with no support in the evidentiary or on legal factors other than those that are relevant to such an award. When reviewing the grant of attorney's fees, this Court must take into consideration,

the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was "created" by the attorney; the professional skill and

standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.

*Id.* (quoting *Gilmore v. Dondero*, 399 Pa.Super. 599, 582 A.2d 1106 1109 (1990)) (citing *LaRocca Estate*, 431 Pa. 542, 246 A.2d 337 (1968)).

¶ 25 In justifying its award of counsel fees, the trial court explained:

It should be noted that Wife presented a claim for counsel fees in excess of $38,000.00 plus costs, which bought the total to slightly in excess of $41,200.00. Based upon our findings of obdurate, dilatory, and vexatious conduct on the part of Husband at times, and because an inordinate amount of the fees were required to uncover the facts and circumstances in dealing with the OshKosh settlement and the distribution of the settlement proceeds, as that settlement was such a fundamental part of the case, an award of attorney fees was reasonable. In addition, Husband made it difficult to determine the circumstances behind that case, all of which Wife had a right to know the details, and in consideration of the support matters that were brought to the Court, the mortgage and line of credit foreclosure proceedings, the Porsche contempt proceedings, and what we believe to be credible evidence from Wife that Husband had warned her that he would "run her out of money", we believe the award of the fees was necessary in order to bring the parties on a par and to effectuate economic justice. *Schubert vs. Schubert* 398 Pa.Super. 284, 580 A.2d 1351 (1990). We assessed all relevant factors including Husband's ability to pay, Wife's financial resources, the value of services rendered, and the property received by

Wife in equitable distribution. We believe the award of one-half of her counsel fees was appropriate under all of these circumstances.

Opinion, at 10–11. The record contains more than enough evidence to support the trial court's award of counsel fees. Thus, we will affirm the grant of $20,000.00 in attorneys' fees to Wife.

### III. CONCLUSION

¶ 26 After careful review of all the issues raised by Husband, we affirm in part, reverse in part, and remand the case for further proceedings consistent with this opinion.

¶ 27 Decree and orders affirmed in part and reversed in part; case remanded for further proceedings. Jurisdiction relinquished.