# Miller v. Miller

C.P. of Dauphin County, no. 1049 DR 1998.

*Melissa Peel Greevy,* for obligee.
*Andrew C. Spears,* for obligor.

TURGEON, *J.,* November 10, 2004—Currently before the court is obligee Stacy Miller's de novo appeal from an April 20, 2004 child support order. She argues that her ex-husband, the obligor Joel Miller, should be (1) required to contribute to her mortgage payment through his child support obligation, as required under Rule 1910.16-6(e) of the Pennsylvania Support Guidelines and *Isralsky v. Isralsky,* 824 A.2d 1178 (Pa. Super. 2003). Alternatively, she argues she is otherwise entitled to the adjustment (2) under the terms of the parties' marital settlement agreement or (3) because she is entitled to an upward deviation in the support award due to the unusual circumstances of this case. Obligor argues that obligee is not entitled to the mortgage adjustment through the support order because the support guidelines permit such an adjustment only for a mortgage on a "marital residence" and the parties are no longer married. For the reasons set forth below, this court grants obligee's request for a mortgage adjustment/deviation to the child support order.

## BACKGROUND

The parties were married in 1994 and separated in 1998. At the time of their separation, they had one daughter born in 1996. Obligee sought, and obtained, an original order of child support effective April 1998, but the order was suspended in October 1998. The parties reconciled and later had a son, born in 2002. However, in March 2003, obligee sought support for both children. At the time, obligee had primary custody of both children and resided in the former marital residence, paying first and second mortgages on the home. A recommended order was thereafter entered May 14, 2003, effective March 13, 2003, requiring that obligee pay $277 per week for the support of two children. A second order, also entered May 14, 2003, effective August 25, 2003, reflecting the fact that obligee would be reentering the workforce, modified the child support award to $243 per week.[1] The calculations made by the hearing officer indicate that the $277 order included $136 per week in child support plus an additional $141 per week as an upward adjustment reflecting obligor's one-half obligation for that portion of obligee's mortgage payment on the marital residence that exceeded 25 percent of her net income, pursuant to Rule 1910.16-6(e). Pa.R.C.P. 1910.16-6(e). The $243 order consisted of $173 per week for child support plus an additional $70 per week up-

---

1. Both May 14, 2003 orders indicated that they provided support for the obligee as well as the children. However, a review of the support calculations shows that the orders did not include spousal support.

ward adjustment toward the obligee's mortgage payment on the marital residence.

On January 27, 2004, the parties were divorced by decree, the terms of which incorporated but did not merge their marital settlement agreement. *Miller v. Miller,* no. 2003 CV 1317. On February 26, 2004, obligor filed a petition to decrease the child support order, seeking a reduction of $70 per week, representing the mortgage adjustment because the parties were now divorced. Following a domestic relations office conference, this court issued an order, upon the recommendation of the hearing officer, dated April 20, 2004, effective as of the date of divorce, reducing the child support to $173 per week, thereby deleting obligor's $70 per week mortgage contribution therefrom.[2] Obligee filed a timely request for de novo review. The de novo hearing was held July 28, 2004, following which I took this interesting issue under advisement.[3]

## LEGAL DISCUSSION

The main issue raised is whether the obligor's child support obligation should include a mortgage adjustment under Pa.R.C.P. 1910.16-6(e) requiring that he pay a portion of obligee's monthly mortgage payment where

___

2. This order should not have been effective to a date prior to the filing of the modification petition. *Kelleher v. Bush,* 832 A.2d 483, 485 (Pa. Super. 2003) (modification of a support order is retroactive to the date when modification was initially sought unless the court sets forth reasons for failing to do so on the record).

3. The parties agreed at the hearing that the mortgage adjustment, if permitted under current calculations, would be reduced from $70 to $52 per week.

the home is no longer a marital residence. The law governing child and spousal support is set forth in the Domestic Relations Code, as well as the support guidelines promulgated by general rule of the Pennsylvania Supreme Court. 23 Pa.C.S. §4322(a); Pa.R.C.P. 1910. 16-1 through 1910.16-7. The purpose of the support guidelines as set forth under section 4322 of the Domestic Relations Code, is as follows:

"(a) Statewide Guideline.—Child and spousal support shall be awarded pursuant to a statewide guideline as established by general rule by the Supreme Court, so *that persons similarly situated shall be treated similarly.* The guideline shall be based upon the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support. In determining the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support, the guideline shall place primary emphasis on the net incomes and earning capacities of the parties, with allowable deviations for unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention. The guideline so developed shall be reviewed at least once every four years." 23 Pa.C.S. §4322(a). (emphasis added)

The support guideline(s) promulgated under the authority of section 4322, have the force of statute. *Maddas v. Dehaas,* 816 A.2d 234 (Pa. Super. 2003). The specific rule in question, relating to the mortgage adjustment, is as follows:

"Rule 1910.16-6. Support guidelines. Adjustments to the basic support obligation . . .

"*(e) Mortgage payment.* The guidelines assume that *the spouse occupying the marital residence* will be solely responsible for the mortgage payment, real estate taxes, and homeowners' insurance. Similarly, the court will assume that *the party occupying the marital residence* will be paying the items listed unless the recommendation specifically provides otherwise. If the obligee is living in the marital residence and the mortgage payment exceeds 25 percent of the obligee's net income (including amounts of spousal support, APL and child support), the court may direct the obligor to assume up to 50 percent of the excess amount as part of the total support award. For purposes of this subdivision, the term 'mortgage' shall include first mortgages, real estate taxes and homeowners' insurance and may include any subsequent mortgages, home equity loans and any other obligations incurred during the marriage which are secured by the marital residence.

"Explanatory comment—1998 . . .

"New subdivision (e) substantially incorporates former Rule 1910.16(g) and has been modified to provide some uniformity and certainty as to what constitutes an unusually high mortgage payment that may justify an upward adjustment to the basic support obligation. The change is intended for the benefit of the obligee in the marital residence. There is no adjustment if the obligor is living there.

"Explanatory comment—2000 . . .

"Subdivision (e) has been amended to correct a drafting error in the definition of 'mortgage.' It always was the intention of the committee to include in the defini-

tion the real estate taxes and homeowners' insurance referenced in the first sentence of the rule. In addition, while real estate taxes and homeowners' insurance must now be included if the trier of fact applies the provisions of this subdivision, the inclusion of second mortgages, home equity loans and other obligations secured by the marital residence is within the discretion of the trier of fact based upon the circumstances of the case." Pa.R.C.P. 1910.16-6(e). (emphasis added)

The language of this rule arguably indicates it should only apply in cases where the parties are married, employing, as it does, language seemingly limiting its application to "a spouse occupying the marital residence." Upon a divorce, parties are no longer spouses and the home is no longer a "marital residence." However, the Superior Court in *Isralsky v. Isralsky, supra,* approved of the application of this rule following divorce. In *Isralsky,* husband appealed from comprehensive findings of alimony, child support, modification of child support, alimony pendente lite and equitable distribution issued by the esteemed Honorable Eugene F. Scanlon Jr. One issue raised by husband was that the trial court had erred by ordering him to pay an extra $400 per month toward child support as a mortgage adjustment under Rule 1910.16-6(e). In making the award, Judge Scanlon reasoned as follows: "[T]he hope was to keep the children in the residence and in the same school district for as long as possible. Accordingly, we either could have increased the alimony order to accommodate [wife's] needs, or apply the mortgage deviation [to the child support order]. We chose the latter as the most equitable under

all the circumstances of this case." *Id.* at 1187. On appeal, husband had argued that the mortgage adjustment rule could not be applied after entry of a divorce decree. *Id.* The Superior Court panel disagreed and wisely held the trial court exercised reasonable discretion in applying Rule 1910.16-6(e) post-divorce. The Superior Court reasoned as follows:

"The Pennsylvania Supreme Court is required by statute to develop guidelines for child and spousal support. 23 Pa.C.S. §4322(a). The statute clearly indicates that the guidelines are applicable to both child and spousal support. *Id.* Rules of Civil Procedure 1910.16-1 through 1910.16-7, set forth the guidelines as promulgated by our Supreme Court. Rule 1910.16-6(e) simply provides, 'some uniformity and certainty as to what constitutes an unusually high mortgage payment that may justify an upward adjustment to the basic support obligation.' Pa.R.C.P. 1910.16-6(e), explanatory comment—1998. It is well established in Pennsylvania that mortgage payments are to be included when calculating child support. *Shutter v. Reilly,* 372 Pa. Super. 251, 539 A.2d 424 (1988) ('Among the bare necessities of a child's life is a home'); *Shapera v. Levitt,* 260 Pa. Super. 447, 394 A.2d 1011 (1978) (reasonable household expenses are necessarily included in a support order). Our court reaffirmed this position in *Lampa v. Lampa,* 371 Pa. Super. 1, 537 A.2d 350 (1988), when it stated, 'that in reaching the determination as to the inclusion of mortgage payments and household utilities in calculating support, the court is to be cognizant of the fact that a child's station in life is dependent at least in part upon where the child lives.' *Id.* at 353." *Id.*

*Isralsky* thus seems to interpret Rule 1910.16-6(e) as simply defining and setting a uniform policy as to when an "unusually high mortgage payment" exists so as to justify an upward adjustment in a child support obligation. The Superior Court otherwise dismisses the idea that this rule can limit the mortgage adjustment to pre-divorce situations, recognizing that the law in Pennsylvania has been for some time that (high) mortgage payments are always a consideration in calculating support, regardless of whether the mortgage payments are made prior to or after a divorce. *Id.* The logical extension of *Isralsky,* reflected in its quotation of *Lampa*—"that a child's station in life is dependent at least in part upon where the child lives"—is that the "25 percent rule" for adjusting a mortgage should be equally available to any party concerning any housing and related expenses, including rental properties and regardless of whether the parents were ever married, or could have ever married under the law.[4]

---

4. Were the rule interpreted otherwise, that is by limiting housing adjustments only to pre-divorce mortgage payments on marital residences, this rule would raise serious equal protection issues. For instance, the rule would thus treat differently children who live in the former marital residence upon which an unusually high mortgage payment is made and whose parents are now separated, from children of unmarried partners, now separated, who had similarly lived in the jointly-owned family residence and upon which an unusually high mortgage payment is made. In the latter case, the children of the unmarried couple will be deprived of housing assistance support otherwise afforded to children of a married couple. In addition, a literal interpretation of the rule would treat differently an obligee spouse and/or children who, following separation, live in the marital residence upon which an unusually high mortgage payment is owed, from an obligee spouse and/or children who continued to rent the marital resi-

A proposed amendment to support guidelines Rule 1910.16-6(e) proposes language clarifying that the mortgage contribution may be ordered only "until such time as an order of equitable distribution is entered," specifically to overrule *Isralsky*.[5] The Pennsylvania Supreme

---

dence following separation, upon which unusually high rental payments are owed. In the latter case, the obligee spouse and/or children who rent will be deprived of extra support in the form of housing assistance otherwise afforded a spouse and children who owned their home.

Although the issue is not currently before the court, it is hard for this court to imagine what rational relationship there exists between these discriminations and any policy the state might have in making them. Furthermore, these distinctions seem violative of the policy statement language set forth by the legislature in creating the support guidelines, which were established "so that persons similarly situated shall be treated similarly." 23 Pa.C.S. §4322.

5. Proposed **Rule 1910.16-6. Support guidelines. Adjustments to the basic support obligation.**

"(e) *Mortgage payment.* The guidelines assume that the spouse occupying the marital residence will be solely responsible for the mortgage payment, real estate taxes, and homeowners' insurance. Similarly, the court will assume that the party occupying the marital residence will be paying the items listed unless the recommendation specifically provides otherwise. If the obligee is living in the marital residence and the mortgage payment exceeds 25 percent of the obligee's net income (including amounts of spousal support, APL and child support), the court may direct the obligor to assume up to 50 percent of the excess amount as part of the total support award **until such time as an order of equitable distribution is entered.** For purposes of this subdivision, the term 'mortgage' shall include first mortgages, real estate taxes and homeowners' insurance and may include any subsequent mortgages, home equity loans and any other obligations incurred during the marriage which are secured by the marital residence.

"**Explanatory comment—2003** . . .

"**Subdivision (e), relating to mortgages on the marital residence, has been amended to clarify that the rule cannot be applied after a final order of equitable distribution has been entered. To the**

Court has not yet determined whether it will adopt the proposed changes, and therefore, until such time, *Isralsky* is the polestar for resolution of the issue before this court.

The interpretation of *Isralsky* argued by obligor, that the mortgage adjustment can apply only through the date of divorce, implies that the reason for this rule is the preservation of the marital home/asset through the date of divorce. It is suggested, thus, that the marital home no longer needs to be preserved following equitable distribution and divorce and that the issue of high mortgage payments can be addressed in the equitable distribution scheme. As was borne out by *Isralsky,* however, the equitable distribution judge might not choose to address the high mortgage payment situation in the equitable distribution scheme and as such, the support judge must retain the discretion to address this issue in a post-divorce support order.[6] Thus, *Isralsky* clearly gives this court the right to award a mortgage (housing) adjustment post-divorce. Nevertheless, such an award is clearly discretionary under the language of Rule 1910.16-6(e) and must ulti-

---

extent that ***Isralsky v. Isralsky,*** **824 A.2d 1178 (Pa. Super. 2003), holds otherwise, it is overruled. At equitable distribution, the former marital residence will either have been awarded to one of the parties or otherwise addressed."** Pa. Bulletin, vol. 33, no. 29, p. 3491 (Recommendation 66—Amendments to the Rules of Civil Procedure Relating to Domestic Relations Matters (July 19, 2003)) (Proposed changes in **bold**).

6. This makes the most practical sense. If the custodial parent sells the property and moves, the child support order can easily be modified, eliminating the mortgage adjustment. However, not including it could result in the custodial parent having to move, for economic reasons, into less desirable living quarters.

mately be based upon the needs of the children. The facts of this case reveal obligee's valid need for the mortgage adjustment: Obligee is responsible for paying both first and second mortgages on the former marital residence and as acknowledged by the marital settlement agreement, she will unlikely be able to refinance for some time due to the large encumbrances against the home.

Additionally, in this case, the language in the parties' marital settlement agreement supports obligee's position that the mortgage adjustment should not have been removed from the child support order. With regard to the marital residence, the marital settlement agreement reflects that it was appraised at $86,000 and was subject to a $75,800 first mortgage and a $31,600 second mortgage. It provides, in relevant part, as follows:

"In consideration of Husband's waiver of his interest in Wife's PSERS retirement plan . . . , and as part of the overall plan of equitable distribution, Wife will assume and pay the second mortgage, . . . and Husband will execute a deed conveying all of this right, title and interest in the marital home to Wife.

"The parties stipulate and agree that due to the amount of the debt against the home, Wife will not be likely able to qualify to refinance the marital home in her name alone in the near future. The parties further stipulate and agree that Wife will assume and pay the first and second mortgages until such time as she is able to refinance and that the regular payment of the full amount of the child support obligation from Husband to Wife is necessary for her to be able to maintain the home for herself and for the parties' children. . . ." (Obligee's exhibit 1.)

As set forth above, obligee assumed payment of both first and second mortgages until she could refinance because she would be receiving *"the regular payment of the full amount of the child support obligation . . . for her to be able to maintain the home for herself and for the parties' children."* At the time she and the obligor entered into the marital settlement agreement, the then-current order of support required that obligor pay $243 per week for the support of two children.

Finally, even were this court to decide against granting a mortgage adjustment under Rule 1910.16-6(e) or under the terms of the marital settlement agreement, obligee would be entitled to an upward deviation of the basic child support amount set forth in the support guidelines schedule to take into account her unusual needs and the standard of living of her children. Deviation of a support order is permitted as follows:

"Rule 1910.16-5. Support guidelines. Deviation . . .

"(b) In deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider:

"(1) unusual needs and unusual fixed obligations;

"(2) other support obligations of the parties;

"(3) other income in the household;

"(4) ages of the children;

"(5) assets of the parties;

"(6) medical expenses not covered by insurance;

"(7) standard of living of the parties and their children;

"(8) in a spousal support or alimony pendente lite case, the period of time during which the parties lived together from the date of marriage to the date of final separation; and

"(9) other relevant and appropriate factors, including the best interests of the child or children." Pa.R.C.P. 1910.16-5. (emphasis added)

Obligee is entitled to a deviation for the reasons she established at the de novo hearing: she is responsible for paying unusually high fixed obligations upon the former marital residence, *i.e.,* the standard of living for the parties and their children; obligor does not pay any summer child day care costs since obligee is a teacher and cares for the children all summer; obligor does not have any financial obligation toward the children's health insurance cost; and under the parties' custody agreement, the obligor, who lives in Florida, has partial custody only 14 days per year, or only about 4 percent of the time, thus increasing obligee's sole financial responsibilities to her children.

Accordingly, we enter the following:

## ORDER

And now, November 10, 2004, following a de novo hearing, this court finds that the obligor Joel Miller is obligated to pay a mortgage adjustment of $52 per week in child support, in addition to the guideline amount. The domestic relations section is hereby directed to enter an order so reflecting, retroactive to February 26, 2004.