J-S40001-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.K.A., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| M.B.Y., | |
| Appellee | No. 2298 MDA 2013 |

Appeal from the Order Dated November 27, 2013
In the Court of Common Pleas of Lancaster County
Domestic Relations at No(s): 2005-00046
PACSES NO. 152103633

BEFORE:  BENDER, P.J.E., BOWES, J., and PANELLA, J.

MEMORANDUM BY BENDER, P.J.E.:               **FILED SEPTEMBER 23, 2014**

J.K.A. (Mother) appeals from the order dated November 27, 2013, and entered on December 6, 2013, that directed M.B.Y. (Father) to pay to Mother support for the parties' child, M.B.A. (born in July of 2001).  After review, we affirm.

Mother's stated issue in her brief reads as follows:  "Did the lower court err in determining [Father's] earning capacity?"  Mother's brief at 4. Specifically, her arguments are directed at the trial court's alleged errors in "calculating Father's income when [the court] did not take into account [Father's] failure to mitigate lost income, abandonment of the child and income derived from all sources."  *Id.* at 10.  When addressing such issues, we are guided by the following:

> [T]his Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

*Samii v. Samii*, 847 A.2d 691, 694 (Pa. Super. 2004) (citations omitted). Furthermore, this Court:

> must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand.

*Hogrelius v. Martin*, 950 A.2d 345, 348 (Pa. Super. 2008). "When the trial court sits as fact finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, [and] the court is free to choose to believe all, part, or none of the evidence presented." *Stokes v. Gary Barbera Enterprises, Inc.*, 783 A.2d 296, 297 (Pa. Super. 2001), *appeal denied*, 568 Pa. 723, 797 A.2d 915 (Pa. 2002). "[T]his Court is not free to usurp the trial court's duty as the finder of fact." *Isralsky v. Isralsky*, 824 A.2d 1178, 1190 (Pa. Super. 2003) (quoting *Nemoto v. Nemoto*, 423 Pa. Super. 269, 620 A.2d 1216, 1219 (Pa. Super. 1993)).

*Mackay v. Mackay*, 984 A.2d 529, 533 (Pa. Super. 2009).

We have reviewed the certified record, the briefs of the parties, the applicable law, and the thorough opinion authored by the Honorable Leslie

Gorbey of the Court of Common Pleas of Lancaster County, dated February 25, 2014.  We conclude that Judge Gorbey's well-reasoned opinion properly disposes of the issue(s) that have been raised by Mother.  Accordingly, we adopt Judge Gorbey's opinion as our own and affirm the support order on that basis.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/23/2014

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
DOMESTIC RELATIONS DIVISION

*J.K.A.*

▓▓▓▓▓▓▓▓▓▓
Plaintiff

vs.

*m.B.y.*

▓▓▓▓▓▓▓▓▓▓
Defendant

Docket No. 2005-00046

PACSES Case No. 152103633

SUPER. CT. NO.: 2298 MDA 2013

BY: LESLIE GORBEY, J.

### ORDER SUR APPEAL

#### Procedural history

*J.K.A.*

This support matter was initiated on January 6, 2005 when Plaintiff ▓▓▓▓▓.

*m.B.y.*

▓▓▓▓ (Mother) filed a support complaint against Defendant ▓▓▓▓▓▓▓

*m.B.A.*

(Father) for support of one child, ▓▓▓▓▓▓▓▓, born on July ▓ 2001. Over the

intervening years, Mother filed a number of petitions for modification of support and the

order was either modified or not modified by the court pursuant to the information

presented. The instant Order resulted from the filing of a petition to modify on July 19,

2013.

A conference on the instant petition was held August 15, 2013 and the

recommended Order was issued by the court on September 12, 2013, directing that

Defendant was to pay $390.73 monthly in child support. The order contained an upward

deviation. Mother appealed this decision and a hearing de novo was held before the

Court on November 27, 2013. The Court entered a two tier order sustaining mother's

appeal, directing that the recommended order would be in effect through December 5,

2013. On December 6, 2013, a new order would become effective, obligating

(A - 2)  1

*m.B.A.*

Defendant to pay $309.23 monthly for the support of ▓▓▓▓▓▓▓▓ This order was calculated pursuant to the Guidelines and was based on earning capacities of $8.25/hr for 25 hours per week for Plaintiff ($790.54 monthly net) and income for the defendant of $400 per week gross ($1301.67 monthly net.)

On December 26, 2013, Mother filed an appeal to the Pennsylvania Superior Court, pursuant to which appeal this opinion sur appeal is being prepared.

### Factual history

*m.B.A.*

Mother and Father are the parents of ▓▓▓▓▓▓▓▓▓▓, age 13. (N.T. 8) Father exercises none of his custodial rights to the child, and hasn't seen him in three years. (N.T. 11) Mother also has two other younger children, but they have a different father, who pays child support to Mother. (N.T. 10) At the time of the hearing, Mother had no employment income. She had last been employed in 2007 at J. C. Penney as a salesperson for a period of five to six months, making an hourly wage of $8.25. (N.T. 12). She left the job because she had no one to care for her youngest two children. She has recently been looking for work, because her children are now all in school. She is a high school graduate. (N.T. 9-11) Mother agreed that she should be given an earning capacity of $8.25 per hour. (N.T. 15)

Father worked for Jack Trier Moving for eight years at a seasonal job, getting unemployment income in the off-season. (N.T. 23) Extrapolating over a year, he made $11.75 per hour, averaging thirty hours per week when he worked. He left the position in March of 2013 because new management had taken away certain benefits, reduced his insurance, and had increased the amount of travel he would have to do, but offered

(A-3)    2

him no increase in pay. (N.T. 20) Between March of 2013 and the conference, he engaged in three episodes of temporary employment cleaning debris, for which he received between $600 and $700. (N.T. 24) Since October 21, 2013, he has been the sole employee of George Grove Delivery Service, delivering new furniture. (N.T. 21) He works between thirty and forty hours per week for $10 per hour. (N.T. 19) He did not go beyond tenth grade. He has recently married. (N.T. 25, 29)

## Issue

Whether a child support figure derived from the Guidelines is appropriate in a situation where Father has quit his job paying $11.75 per hour for an average of thirty hours per week and replaced it with another job paying $10 per hour for thirty to forty hours per week and when Father has spent no custodial time whatsoever with the child for a period of three years.

## Analysis

As a general rule, child support is to be calculated pursuant to the Support Guidelines authorized by statute and promulgated as a Rule of Civil Procedure by the Pennsylvania Supreme Court . 23 Pa.C.S.A. 4322(a); Pa.R.C.P. 1910.16. There is a presumption that the amount is correct, but that presumption can be rebutted, allowing the Court to deviate from the Guideline amount if it finds that the application of the Guidelines would be inappropriate or unjust in a particular case. 23 Pa.C.S.A. 4322(b); Pa. R.C.P. 1910.16-5. If the obligor has employment which provides him or her with a regular monthly income, the support obligation can be determined according to the applicable State Guidelines. If there is no regular income, then the Court is charged

(A-4)  3

with the task of determining a reasonable earning capacity for the unemployed or underemployed individual. An earning capacity is defined "not as an amount which the person could theoretically earn, but that amount which the person could realistically earn under the circumstances, considering his or her age, health, mental and physical condition and training." *Strawn v. Strawn*, 664 A.2d 129 (Pa. Super. 1995)

At the time of the hearing in this matter, Father was employed as a delivery person for a company which delivered new furniture to consumers. His rate of pay was $10.00 per hour or $400 per week gross. He had been making $11.75 per hour at Jack Trier Moving which he left in March of 2013 when new management changed his benefits and his job description to his disadvantage. Between March of 2013 and the conference, he had made additional money in the amount of $600 to $700 in return for three instances of cleaning up debris. Father has no education past tenth grade.

Mother's 1925(b) statement contains a number of complaints concerning Father's employment. She complains first that he left his employment at which he was making a higher wage and failed to take an appropriate replacement job. Mother also believes that Father should be working more hours a week, should have mitigated his loss of income caused by his voluntary quit and did not make any reasonable effort to find work. The Court believes that Father's quit was reasonable in light of a disadvantageous change to his benefits and his duties. At Trier, Father was working an average of 30 hours per week when he is working. At his current job, he is working between 30 and 40 hrs a week. Additionally, he does not get laid off in the off-season. The Court has directly addressed Mother's problem concerning hours in assessing Father for the high part of his hourly estimate – 40 hours per week-- believing it to be

(A-5) 4

reasonable for Father to have accepted a job at a lower hourly rate for more hours rather than continue with unemployment until he finds a job that will pay him the money that Mother believes to be appropriate. Therefore, the Court does not accept Mother's arguments; Father quite clearly sought a new job and through that search mitigated any loss occasioned by the loss of his Trier income. The Court thus finds that it is unnecessary to attribute a higher earning capacity to Father as Mother suggests and finds that Father's monthly income is what he now earns at Grove Delivery for a forty hour week.

Mother complains next that the Court failed to consider that Father takes no custodial time with  thereby increasing her financial obligation for the child. The Explanatory Comments to Pennsylvania Rule of Civil Procedure 1910.6-4 assert that if the obligor spends little or no time with the child and therefore incurs no expenditures that such time would entail, the Court should consider an upward deviation in support. The conference officer did indeed recommend an upward deviation. The Court has considered this possibility and has decided that no upward deviation is to be included. Mother is receiving support for her other two children and is actively looking for work which will provide her with additional income. While Father's obligation is calculated using a forty hour work week, Father's testimony is that he worked between thirty and forty hours. Should he experience a shorter week than forty hours, his net income would be reduced for that week, and an upward deviation would be unjust. There are no other variables in the matter which commend this idea to the Court. The Guideline figure will therefore be utilized as the appropriate amount.

(A-C) 5

Mother also points out, with some justification, that Father's income should include all moneys he received from all sources other than his employment. The Court understands that she is referring to the $600 to $700 that Father earned from a temporary job when he was unemployed. The Court agrees with Mother in theory, but points out that for the purposes of this decision, those earnings, when extrapolated over his entire seven months of unemployment amounts to at most approximately $100 per month, a *de minimus* amount in this support calculation. That being said, however, the Court's order under appeal permitted the higher support obligation set out in the recommended order to remain in effect from July 19, 2013 until December 6, 2013, thus giving Mother an additional $81.50 per month for more than four months, effectively providing her with the major part of Father's extra income.

## Conclusion

Based on the above, the Court dismisses Mother's appeal and affirms all provisions of its order of November 27, 2013.

BY THE COURT:

LESLIE GORBEY, JUDGE

DATED: February 24, 2014

ATTEST:

COPIES TO:
Michael V. Marinaro, Esquire
Lorraine Russell Hagy, Esquire

(A-7) 6