J. S53034/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DORIS PULLETT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| CHARLES PULLETT, | : | No. 3260 EDA 2016 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered September 19, 2016,
in the Court of Common Pleas of Philadelphia County
Family Court Division at No. June Term, 2006, No. 8419

BEFORE:  BENDER, P.J.E., OLSON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MARCH 08, 2018**

Charles Pullett ("Husband") appeals the order of the Court of Common Pleas of Philadelphia County that decreed that he and Doris Pullett ("Wife") were divorced and ordered him to pay Wife $48,405.38, which represented Wife's share of equitable distribution; to pay Wife's present counsel $10,481.25 for counsel fees, costs, and expenses; to pay alimony to Wife in the amount of $1,000 per month for four years or until the death of either party, or upon the remarriage or cohabitation of Wife; and to obtain a life insurance policy designating Wife as beneficiary for a period terminating with the fulfillment of his alimony obligations.  After careful review, we affirm in part, vacate in part, and remand in part.

The trial court recounted the following facts and procedural history:

[T]he parties were married on December 30, 1989. They had three children, two of whom are currently in their 30's and one of whom is in his 20's. Husband alone contributed financially to the family, working continuously as a truck driver for various solid waste hauling entities. For the first half of 2006, Husband's gross pay was $37,548.13. Wife remained at home, raising the children and running the household. During the marriage, Husband had two retirement accounts: 1) a 401(k); and 2) an IRA annuity. In 2007, Husband received funds from a union settlement, the majority of which the parties agree to be marital property. In addition, the parties had a checking account and a savings account. All financial correspondence was sent to Husband's mother's home and not to the marital residence; Wife was not privy to the ongoing financial status of the accounts. The parties never owned the marital residence, but rented the entire time they lived together as a family. Nor did they own any other real property.

Husband testified that the standard of living during the marriage consisted of the family living together and his taking care of them. The family went on a vacation while Husband worked. There never was more than $5000 in savings. Wife testified that Husband "paid the bills" and that she and the children went on one family vacation.

Husband testified the parties continued to live together as long as they did as a married couple because he felt that he had obligations to Wife. Wife testified that during the marriage Husband went out "a lot" and that he was "seeing someone else." Wife also testified the [sic] Husband was verbally abusive and at times was physically abusive.

After separation, Wife obtained employment as a care assistant at a senior living facility, where she remained so employed until she was laid off in February 2016. At the time of termination, Wife earned approximately $30,577 per year. Wife's maximum entitlement to unemployment compensation benefits for the period Feb. 14, 2016

through February 11, 2017 is $8,259. Wife had received post-separation support from Husband of $1,420 per month (Wife and one child) and currently receives $1050 per month (Wife only). Wife has a post-separation 401(k) account, whose value she approximated to be $1000, in which she was not fully vested at the time of the trial.

The documentary and testimonial evidence established the following values for the four primary marital assets: 1) Husband's 401(k) account valued at $23,105.63 as of 7/1/07, the closest date to the time of separation supplied by Husband, 2) Husband's IRA account valued at $45,000 as of 3/31/06, 3) union settlement of $11,410 (pre-tax), and 4) Wells Fargo checking account balance of approximately $3,000.

The salient procedural events in the course of this litigation, as gleaned from the docket report, are as follows:

June 7, 2006 – Complaint in divorce filed by Wife.
July 14, 2006 – Answer and counterclaim filed by Husband.
. . . .
June 12, 2012 – Order approving grounds for divorce.
. . . .
June 15, 2015 – Master's report filed.
. . . .
July 6, 2015 – Husband's praecipe for trial ***de novo***.
. . . .
Sept. 19, 2016 – Trial ***de novo*** conducted and Order filed.
Oct. 18, 2016 – Husband's notice of appeal and Rule 1925(b) statement filed.

In his concise statement of errors complained of on appeal, filed pursuant to Pa.R.A.P. 1925(b), Husband raises 17 discrete issues.[1]

---

[1] Husband raises only four of those issues in his brief before this court.

Trial court opinion, 1/10/17 at 1-4 (footnote and citations to the record omitted). The trial court issued a divorce decree in the first paragraph of the September 19, 2016 order. The trial court entered an amended divorce decree on November 9, 2017.[2]

Appellant raises the following issues for this court's review:

1. Whether the trial court erred as a matter of law or abused its discretion in not applying deferred distribution of the retirement benefits through a qualified domestic relations order (QDRO)[3] -- pursuant to 3501(c)(1) of the Divorce Code -- or alternatively, to calculate the IRS penalty and taxes Husband would have to pay for premature withdrawal of retirement benefits[?]

2. Whether the trial court erred as a matter of law or abused its discretion in not giving Husband credit for paying alimony **pendente lite** [("APL")] for over 10 years, but instead ordered him to continue paying alimony for another four (4) years, which constitutes 14 years total of support to Wife for a 16-year marriage,

_____

[2] This court initially quashed Husband's appeal on October 25, 2017. Husband moved for reconsideration. On December 7, 2017, this court granted panel reconsideration.

[3]       A QDRO is an order "which creates or recognizes the rights of an alternate payee to receive all or a portion of the benefits payable to a participant under the plan. To be 'qualified,' the order must contain certain required information and may not alter the amount or form of plan benefits." **Berrington v. Berrington**, 534 Pa. 393, 633 A.2d 589, 591 n. 3 (1993) (citation omitted). The actual qualifying of the domestic relations order is done by the employer's pension administrator.

**Smith v. Smith**, 938 A.2d 246, 248 n.3 (Pa. 2007).

despite the fact that Wife had been gainfully employed full time for almost ten years subsequent to the parties' separation[?]

3. Whether the trial court erred in ordering Husband to pay alimony on a fixed basis, regardless of any potential future changes in income, earning capacity, health condition, or disability -- in direct violation of 23 Pa.C.S.[A.] § 3701(e)[?]

4. Whether the trial court erred as a matter of law or abused its discretion in ordering Husband to pay Wife $10,481.25 for counsel fees, even though it was undisputed that Wife had worked for over nine years after the parties' separation and received support from Husband in the amount of $1,050 monthly under the statutory formula for APL (40% of the difference in the parties' respective net incomes), which equalized the incomes between the parties and placed the parties in equal financial positions[?]

Appellant's brief at 2-3.

Initially, Husband contends that the trial court erred as a matter of law when it failed to apply deferred distribution of appellant's retirement benefits through a QDRO pursuant to Section 3501(c)(1) of the Divorce Code, 23 Pa.C.S.A. § 3501(c)(1) or alternatively, to calculate the Internal Revenue Service penalty and taxes for premature withdrawal of retirement benefits.

[O]ur standard for reviewing awards of equitable distribution is well settled. The trial court has broad discretion in fashioning such awards, and we will overturn an award only for an abuse of that discretion. *Isralsky v. Isralsky*, 824 A.2d 1178 (Pa.Super. 2003). To assess whether the trial court abused its discretion, we must determine whether the trial court misapplied the law or failed to follow proper legal procedure. *Id.* Further, we measure the

> circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights. ***Id.***

***Hayward v. Hayward***, 868 A.2d 554, 557-558 (Pa.Super. 2005).

Husband argues that the trial court awarded Wife 60% of the total retirement benefits of $68,106, which equaled $40,864, to be transferred to Wife. Husband asserts that this amount should have been distributed through a QDRO from his retirement account into Wife's retirement account. Husband asserts that he cannot withdraw $40,864 without paying the IRS penalty and income tax of a 20% mandatory withholding tax and a 10% early withdrawal penalty. In order to pay Wife in cash, Husband states that he could only receive $28,605 after paying the penalty and tax to the Internal Revenue Service.

The trial court established that the value of Husband's 401(k) account on July 1, 2007, which was the closest date to the time of separation supplied by Husband, was $23,105.63. (***See*** trial court opinion, 1/10/17 at 5.) However, as the trial court points out, Husband testified that he had already withdrawn all the funds from the 401(k) account. (Notes of testimony, 9/19/16 at 89-91.) As there was no 401(k) account from which to draw funds, the transfer could not have been effectuated via a QDRO.

As to Husband's IRA account which was valued at $45,000 as of March 31, 2006, the trial court asserted that Husband waived this issue because he neither asked for a QDRO at trial nor provided the figures upon

which a penalty for early withdrawal could be calculated. A review of the record confirms that Husband did not raise this issue before the trial court. Consequently, it is waived. Issues not timely raised before the trial court are waived on appeal. Pa.R.A.P. 302(a); *Tecce v. Hally*, 106 A.3d 728, 732 (Pa.Super. 2014), *appeal denied*, 125 A.3d 778 (Pa. 2015).

Husband next contends that the trial court abused its discretion when it failed to give Husband credit for paying APL for more than 10 years, but instead ordered him to continue paying alimony[4] for another four years, which constituted 14 years of total support to Wife for a 16-year marriage, despite the fact that Wife had been gainfully employed post-separation.

> Our standard of review regarding questions pertaining to the award of alimony is whether the trial court abused its discretion. We previously have explained that "[t]he purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met." Alimony "is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay." Moreover, "[a]limony following a divorce is a *secondary remedy* and is available only where economic justice and the reasonable needs of the parties cannot be

---

[4] Alimony is paid, if at all, after the parties are divorced. 23 Pa.C.S.A. § 3701(a). APL is paid during the pendency of the divorce so that both parties have equal ability to pursue the divorce proceeding. *See* 23 Pa.C.S.A. § 3702; *Litmans v. Litmans*, 673 A.2d 382 (Pa.Super. 1996).

> achieved by way of an equitable distribution award and development of an appropriate employable skill."

> *Moran v. Moran*, 839 A.2d 1091, 1096-97 (Pa.Super. 2003) (citations omitted) (emphasis in original).

> > In determining whether alimony is necessary, and in determining the nature, amount, duration and manner of payment of alimony, the court must consider numerous factors including the parties' earnings and earning capacities, income sources, mental and physical conditions, contributions to the earning power of the other, educations, standard of living during the marriage, the contribution of a spouse as homemaker and the duration of the marriage.

> *Anderson v. Anderson*, 822 A.2d 824, 830-31 (Pa.Super. 2003) (citations omitted). *See also* 23 Pa.C.S.A. § 3701.

*Teodorski v. Teodorski*, 857 A.2d 194, 200 (Pa.Super. 2004).

Husband argues that it is grossly unfair that he must continue to support Wife after Wife prolonged the divorce process for the clear purpose of collecting alimony *pendente lite*. Husband asserts that nothing prevents Wife from working as a truck driver and earning the same amount as he does. He asserts that the only difference is that he is willing to work overtime at an undesirable job and she is not. He also argues that Wife has a post-marital 401(k) plan.

The trial court addressed this issue:

> This Court has considered all of these factors in determining that four more years of alimony at the

rate of $1000 a month is an appropriate award to Wife. The Court considers the following factors to be of particular significance in this matter: 1) the relative earnings and earning capacities of the parties (Husband's $66,000[5] annual salary; Wife's maximum $8,632 unemployment compensation benefits for period 2/14/16—2/11/17); 2) the ages and the physical, mental and emotional conditions of the parties; 3) the sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits; 4) the duration of the marriage; 5) the standard of living of the parties established during the marriage; 6) the relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment; 7) the relative assets and liabilities of the parties; 8) the contribution of Wife as homemaker; 9) the relative needs of the parties; 10) the marital misconduct of Husband during the marriage; 11) [w]hether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs; and (12) Wife's capability to support herself through appropriate employment.

Additionally, Husband is not obligated to pay for Wife's medical insurance and Wife, presumably, will be required to obtain a policy of her own. The Court gave great weight to the disparity of the earnings of the parties. Husband currently earns approximately $66,000 a year, while the Wife receives APL [] of $1050 per month and $332 a week in unemployment compensation benefits (maximum benefit of $8,632 for the period 2/14/16—2/11/17).

Trial court opinion, 1/10/17 at 11-13.

_____

[5] The trial court mentioned an income amount of $37,548.13 in its factual summary. This number represents Husband's income for the first half of 2006. Wife filed a divorce complaint in June 2006.

First, with respect to the award of alimony, it is clear the trial court reviewed the relevant statutory factors for alimony. *See* 23 Pa.C.S.A. § 3701(b). Second, although Husband referred to Wife's post-marital 401(k), Wife testified that the account was valued at approximately $1,000. (Notes of testimony, 9/19/16 at 227.) In and of itself, this amount would not be sufficient to cause the trial court's award to constitute an abuse of discretion. Third, although Husband asserts that Wife prolonged the duration of the litigation, the trial court explicitly found, "[c]ontrary to Husband's representation, Wife has not 'protracted and prolonged' this divorce proceeding, as evidenced by the docket entries." (Trial court opinion, 1/10/17 at 10.) Fourth, while Husband focuses on the APL he paid during the pendency of the divorce, the purposes of APL and alimony are different. APL is paid during the course of divorce proceedings so that both parties have equal ability to pursue the divorce proceeding. *See* 23 Pa.C.S.A. § 3702. "Alimony following a divorce is a ***secondary remedy*** and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill." *Moran*, 839 A.2d at 1097, quoting ***Twilla v. Twilla***, 664 A.2d 1020, 1022 (Pa.Super. 1995) (emphasis in original). Given the different purposes for APL and alimony, the fact that Husband paid APL during the course of the divorce proceedings does not preclude the award of alimony

following a divorce. This court does not find that the trial court abused its discretion when it fashioned its award of alimony.

Husband next contends that the trial court erred when it ordered him to pay alimony non-modifiable in amount or duration and only terminable upon the death of either party or Wife's remarriage or cohabitation in direct violation of Section 3701(e) of the Divorce Code, 23 Pa.C.S.A. § 3701(e).

Section 3701(e) provides:

> **(e)  Modification and termination.--**An order entered pursuant to this section is subject to further order of the court upon changed circumstances of either party of a substantial and continuing nature whereupon the order may be modified, suspended, terminated or reinstituted or a new order made. Any further order shall apply only to payments accruing subsequent to the petition for the requested relief.  Remarriage of the party receiving alimony shall terminate the award of alimony.

23 Pa.C.S.A. § 3701.

The order to which Husband refers states in pertinent part the following:

> 3.  Husband shall pay alimony to Wife in the amount of $1,000 per month for a period of 4 years (48 months) effective the date of this decree and order.  Said alimony shall terminate upon the expiration of the aforesaid 4 year period, upon the death of either party, or upon the remarriage or cohabitation of Wife, whichever first occurs. Otherwise, said alimony shall be non-modifiable in amount and duration. A separate domestic relations order is being entered contemporaneously herewith.

Order, 9/19/16 at 1-2, ¶ 3 (capitalization and bolding omitted).

In its opinion, the trial court stated, "[t]his issue is without merit as nothing in the Court's order precludes Husband from seeking modification, suspension, termination, or reinstitution of the order should either party experience changed circumstances of a substantial and continuing nature." (Trial court opinion, 1/10/17 at 14.)

Husband correctly asserts that under the plain language of the statute, changed circumstances of a substantial and continuing nature by either party may lead to a modification, suspension, termination, reinstitution, or a new order. However, under the order fashioned by the trial court, the possible modification is limited to a termination of alimony upon the death of either party or the remarriage or cohabitation of Wife. Further, although the order states that a separate domestic relations order would be entered contemporaneously, the docket entries and record of this case do not indicate that such an order was entered. To add to the confusion, the trial court states in its opinion that nothing in the order prevents Husband from seeking modification if either party experiences changed circumstances of a substantial and continuing nature. The order clearly does not state that.

The trial court erred or abused its discretion when it issued an order that was not in conformity with Section 3701 of the Divorce Code. This court vacates paragraph 3 of the September 19, 2016 order and remands to the trial court for the insertion of language concerning modification of the alimony

award that conforms with Section 3701 of the Divorce Code and the trial court's opinion.

Husband next contends that the trial court abused its discretion when it ordered Husband to pay Wife $10,481.25 for counsel fees, even though it was undisputed that Wife had worked for almost ten years post-separation and received support from Husband under the statutory formula for APL which equalized the incomes between the parties and placed the parties in equal financial positions.

> Our standard of review of the award of counsel fees pursuant to the Domestic Relations Code is for an abuse of discretion. ***See Bowser v. Blom****,* 569 Pa. 609, 807 A.2d 830, 834 (Pa. 2002). An abuse of discretion is "[n]ot merely an error of judgment, but if in reaching a conclusion[,] the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record." ***Id.*** (citations omitted). "[R]eview of the grant of counsel fees is limited . . . and we will reverse only upon a showing of plain error." ***Isralsky v. Isralsky****,* 824 A.2d 1178, 1192 (Pa.Super. 2003) (citation omitted).

> ***Kraisinger v. Kraisinger****,* 34 A.3d 168, 175 (Pa.Super. 2011).

***Habjan v. Habjan****,* 73 A.3d 630, 642 (Pa.Super. 2013).

Husband argues that because he paid APL since the time of separation and Wife worked outside the home post-separation, their incomes were

comparable. He also asserts that she protracted the litigation in order to reap additional APL. As stated above, the trial court did not accept this contention that Wife unnecessarily extended the litigation. Husband asserts that forcing him to pay Wife's counsel fees after ten years of paying APL and after Wife took steps to prevent the divorce from being finalized is a gross injustice, an abuse of discretion, and a misapplication of the law.

The trial court explained its decision with respect to attorney fees:

> The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be "on par" with one another. Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution.
>
> This Court considered Husband's ability to pay ($66,000 annual salary), Wife's current financial resources ($8,259 maximum unemployment compensation benefits for period 2/14/16—2/11/17), the value of the services rendered by Wife's counsel, and the property received in equitable distribution in exercising its discretion in awarding Wife counsel fees. As previously noted, Husband has the ability to pay Wife's counsel fees, while Wife is currently unemployed. Contrary to Husband's representation, Wife has not "protracted and prolonged" this divorce proceeding, as evidenced by the docket entries. Husband has made no showing that the hourly rate ($350) charged by Wife's counsel was outside the range of experienced divorce attorneys practicing in the Philadelphia area. This issue is without merit.

Trial court opinion, 1/10/17 at 10 (citations omitted).

A review of the record supports the trial court's conclusion that Husband earns substantially more than Wife earns and that Husband has the ability to pay Wife's counsel fees. Further, it is not for us to determine if the rate charged by Wife's counsel was exorbitant. Additionally, although Husband asserts that he paid APL for ten years, Wife testified that Husband came back to court to have the amount reduced, and at the time, Wife could not afford to pay counsel to challenge the action. (Notes of testimony, 9/19/16 at 208.) Husband's counsel stipulated that spousal support was suspended in 2007. (*Id.* at 147.) In 2012, such support was reinstated. (*Id.* at 151.) The trial court considered the relevant factors when it awarded attorney fees. The trial court did not abuse its discretion when it did so.

Order affirmed in part, vacated in part, and remanded in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/8/18