**Gabriel v. Gabriel**

in which they agreed that the February 11, 2014 order was applicable to defendant Rite-Aid as well.

*Charles S. Cusick, Jr.*, for plaintiff.
*John J. Bongivengo*, for defendant.

HODGE, *J.*, April 14, 2014—Before the court for disposition is a petition to compel, petition for special relief and motion to correct APL Arrearages, all filed on behalf of the plaintiff, Kathleen A. Gabriel (hereinafter, "wife") against the defendant, Eugene W. Gabriel (hereinafter, "husband").

Husband and wife were married on July 3, 1982. They separated on August 18, 2006. Shortly thereafter, wife filed a complaint in divorce and set forth claims for economic relief. The case was bifurcated, and the parties appeared before the equitable distribution master in the summer of 2009. The parties were divorced by a decree entered in August 2009.

During the parties' marriage, husband established a franchise with Ameriprise Financial, Inc. (hereinafter, "Ameriprise"). Husband is the sole owner of the franchise, and he works there as a financial planner. Wife served the parties' marriage as a homemaker and primary caregiver for the parties' two children. In 2003, wife obtained employment in the retail sector. Ameriprise was the only significant economic asset of the parties' marriage, and the division of Ameriprise was the primary issue litigated during the equitable distribution proceedings.

Following four days of testimony, the equitable distribution master filed a report and recommended order, to which wife filed exceptions. Following a hearing before

the court, the court entered an order resolving the pending economic claims. The court specifically determined that wife was entitled to a larger distribution of the marital assets, counsel fees and an increase in alimony. The parties were also before the court for a DeNovo Support Hearing on April 23, 2009. Based upon the testimony presented at that hearing, this court directed husband to pay wife the sum of $3,332.35 per month in spousal support, plus $200.00 per month toward arrearages, effective November 25, 2008.

Husband appealed the court's final economic order; however the Superior Court of Pennsylvania ultimately affirmed this court's determinations. *See Gabriel v. Gabriel*, 1734 WDA 2011 (Pa. Super. August 29, 2012); *Gabriel v. Gabriel*, 1155 WDA 2010 (Pa. Super. August 2, 2011).

Pursuant to this court's final economic order, wife was awarded 65% of the Ameriprise franchise, equaling $228,800.00. If husband was unable to pay wife a lump sum, husband could pay on a monthly basis over a period of ten years, at six percent simple interest. Wife was awarded $2,000.00 per month alimony until wife reached the age of sixty-two, and counsel fees in the amount of $10,000.00. Husband was also directed to maintain wife as the primary beneficiary on several life insurance policies to secure wife's equitable distribution award. Additionally, husband was directed to pay wife $6,000.00 for her interest in stocks obtained during the course of marriage.[1]

After the Superior Court's affirmation of this court's order, wife filed a petition to compel/petition for special relief, wherein wife alleged that husband failed to pay wife 65% of Ameriprise pursuant to the final economic order. Wife

---

[1]. The final economic order included other provisions relating to the marital estate. However, the provisions specifically referenced herein were referenced by wife in her petition to compel/petition for special relief as being at issue.

further alleged that husband failed to pay her counsel fees, maintain his support obligation during the appeal process and pay other sums owed following equitable distribution. On February 21, 2014, wife filed a petition for contempt because husband failed to provide wife with timely answers to interrogatories submitted to husband in preparation for the hearing on wife's petition to compel/petition for special relief. The court directed husband to answer the interrogatories and deferred a determination on wife's allegations of contempt.

Wife also filed a motion to correct APL Arrears, which the court believes is substantially related to her petition to compel/petition for special relief. The court therefore scheduled a consolidated hearing on all of the pending issues, which are now properly before the court for a determination.

## I. Wife's Petition for Contempt

In her petition for contempt, wife states that she served husband with interrogatories and requests for production of documents on January 8, 2014. Husband failed to provide wife with any response, and wife filed the instant petition for contempt. Husband's counsel argues that the form of pleading is incorrect, and wife must first file request to compel the responses prior to initiating a contempt proceeding. Wife references husband's dilatory conduct throughout the history in this case, as evidence that husband is purposefully not complying with the discovery requests in addition to orders issued by this court.

When considering a petition for civil contempt of court, the Pennsylvania Courts have consistently stated that:

> Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute. When reviewing an appeal from a contempt order, the

appellant [sic] court must place great reliance upon the discretion of the trial judge. On appeal from a court order holding a party in contempt of court, our scope of review is very narrow. We are limited to determining whether the trial court committed a clear abuse of discretion.

*Langendorfer v. Spearman*, 797 A.2d 303, 307-08 (Pa. Super. 2002) (quoting *Garr v. Peters*, 773 A.2d 183, 189 (Pa. Super. 2001)).

In order to sustain a finding of civil contempt, the complainant must prove certain distinct elements by a preponderance of the evidence: (1) that the contemnor had notice of the specific order or decree which she is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. *Stahl v. Redcay*, 897 A.2d 478, 489 (Pa. Super. 2006).

In her petition for contempt, wife asserts that husband exhibited contemptuous behavior by failing to comply with her discovery requests. A thorough review of both the divorce action and support action indicated, however, that prior to the presentation of wife's contempt petition, there was not an order of court directing Husband to comply with wife's discovery requests. Obviously, the Pennsylvania Rules of Civil Procedure do not require a court order to effectuate compliance with discovery requests, but failing to answer interrogatories does not, in and of itself, mandate a finding of contempt. Furthermore, husband's counsel offered sufficient justification for his delay in producing answers. Based on the facts present, the court finds insufficient evidence to sustain a finding of civil contempt.

Defendant/husband supplied plaintiff/wife with answers to interrogatories on March 21, 2014; plaintiff/wife used the answers provided to pursue her claims for special relief, counsel fees and contempt.

## II. Wife's Petition to Compel/Petition for Special Relief

At the April 1, 2014 hearing, husband conceded his obligation to comply with this court's June 28, 2010 order, but contested the remaining sums owed and additional penalties requested by wife. Specifically, husband agreed to pay wife's counsel fees as directed in the June 28, 2010 order of court. Husband objected, however, to wife's request for additional counsel fees and interest on the fees owed from August 23, 2010 through November 23, 2013. The court finds wife's request to have merit; however, the court is not inclined to award wife interest during the time period that this case was being reviewed by the Superior Court. The memorandum opinion, affirming this court's June 28, 2010 order was issued on August 29, 2012. From that date to the present, wife is entitled to interest on her counsel fees, which the court calculates as follows:

August 30, 2012 — August 30, 2013 at 6% $600.00

August 31, 2013 — April 1, 2014 at 6% $350.00

Total $950.00

Husband also agreed to pay wife the balance owed on wife's share of the stock proceedings, which was originally valued at $6,000.00. Husband and wife agree that husband provided wife with a single payment of $500.00. Therefore husband must pay wife the remaining $5,500.00.

Lastly, husband agreed that pursuant to this court's June 28, 2010 order, wife is entitled to 65% of the value of husband's business, Ameriprise, equaling $228,800.00. However, husband contends that he paid additional sums each month on his support obligation, with the intention that the additional monies would constitute a payment on wife's equitable distribution award. Wife agrees that husband has made overpayments, but disputes the amount

of overpayments.

The PACSES record, as provided by domestic relations, provides the court with a detailed payment record of the sums provided to wife by Husband in the instant support proceeding. Dispositive of the court's analysis are two orders relating to support. Following the entry of a divorce decree, this court issued an order on August 24, 2009 terminating wife's spousal support and converting husband's monthly obligation of $3,332.25 to an APL award. Next, on June 28, 2010, this court issued its final economic order granting wife's exception to the equitable distribution master's recommendation regarding alimony and awarding wife alimony in the amount of $2,000.00.

Procedurally, the court's determination with respect to wife's award of alimony would terminate husband's obligation to pay wife APL.[2] Simply stated, wife is entitled to receive $3,332.35 each month with that amount being designated as APL. Upon implementation of the alimony award, the monthly amount received by wife would be reduced to $2,000.00. Therefore, the effective date of wife's alimony award greatly affects the amount of credit owed to husband. Husband believes wife's alimony award should begin immediately following the issuance of the June 28, 2010 order. According to husband's argument, all payments made to domestic relations after June 28, 2010 should be characterized as alimony, thereby increasing the overpayments made by husband. Wife alternatively argues that she was entitled to APL while husband appealed this

2. September 25, 2013, upon motion of domestic relations, wife's monthly APL award was terminated, and husband was directed to commence alimony payments in the amount of $2,000.00 effective June 28, 2010. Wife subsequently filed the motion to correct arrearages requesting the court to terminate APL on September 29, 2012 and commence alimony on September 30, 2012. The parties reserved their right to argue the amount of husband's arrearages at the April 1, 2014 hearing.

court's final economic order. Wife maintains that her alimony award should not commence prior to September 30, 2012. The issues set forth above are the basis for wife's petition to compel/petition for special relief and wife's motion to correct APL arrearages.

In order to resolve the issues surrounding husband's payments to domestic relations following equitable distribution, the court must first clarify the differences between alimony pendent lite (hereinafter, "APL") and spousal support. It is well established that spousal support and APL are distinct concepts. *Horn v. Horn*, 564 A.2d 995 (Pa. Super. 1989); *Prozzoly v. Prozzoly*, 475 A.2d 820 (Pa. Super. 1984); *Wargo v. Wargo*, 136 A.2d 163 (Pa. Super. 1957). The duty to provide spousal support is derived from marital obligations, *White v. White*, 313 A.2d (Pa. Super. 1973), and that duty terminates when the marriage ends, *Remick v. Remick*, 456 A.2d 163 (Pa. Super. 1983). Spousal support is designed to ensure the dependent spouse a reasonable living allowance. *Levine v. Levine*, 520 A.2d 466, 468 (Pa. Super. 1987). Alternatively, the duty to provide a dependant spouse with APL arises upon the commencement of litigation and continues until all of the economic issues are settled. *Wolk v. Wolk*, 464 A.2d 1359 (Pa. Super. 1983). APL is designed to allow a dependent spouse to pursue the divorce litigation and defend, on equal footing, the economic claims existing between the parties. *Keller v. Keller*, 419 A.2d 49 (Pa. Super. 1980). Spousal support and APL are not mutually exclusive, *Remick v. Remick*, 456 A.2d 163 (Pa. Super. 1983), nor interdependent, *Keller v. Keller*, 419 A.2d 49 (Pa. Super. 1980) (support obligation ended, but APL obligation continued).

APL is allowable to either spouse during the pendency of the action. *DeMasi v. DeMasi*, 597 A.2d 101, 104 (Pa. Super. 1991). The award of APL is not dependent upon the status of the parties but on the state of the litigation. *Id.* This

means, in theory, that the APL terminates at the time of divorce which usually concludes the litigation. *Id.* However, a divorce is not final for purposes of APL until appeals have been exhausted and a final decree has been entered. *Id.* Thus, while APL typically ends at the award of the divorce decree, which also should be the point at which equitable distribution has been determined, if an appeal is pending on matters of equitable distribution, despite the entry of the decree, APL will continue throughout the appeal process *and any remand* until a final order has been entered. *Id.*

Alimony, however, is an order for support issued in conjunction with a decree granting a divorce. 23 Pa.C.S.A. §3103. Alimony is designed to effectuate economic justice between the parties by insuring that the reasonable needs of the dependant spouse are sustained following the dissolution of marriage. *Isralsky v. Isralsky*, 824 A.2d 1178 (Pa. Super. 2003). The duty to provide alimony, like support and APL, arises out of marriage, but alimony, unlike support and APL, continues after the divorce is finalized and all economic issues between the parties are resolved. *Semasek v. Semasek*, 479 A.2d 1047 (Pa. Super. 1984). The purpose of alimony is not to reward one party and to punish the other, but rather to ensure that reasonable needs of the person, who is unable to support himself or herself through appropriate employment, are met. *Id.*

Given the litany of case law referenced above, it is clear that wife is entitled to receive APL throughout the duration of litigation. Thus, while Husband was exercising his ability to appeal this court's final economic order, husband was under the obligation to pay wife APL. Upon exhaustion of the appeal process and remand to this court, wife's APL award terminated and her entitlement to alimony began. Based on the court's determination, the court finds that the order of court issued on March 11, 2014, which corrected the duration of wife's APL award and established an effective

date for wife's alimony award, to be correct. Upon the court's own inquire, the court sets husband's overpayment balance to be $19,153.31 as of April 14, 2014. This balance is consistent with the changes made in the domestic relations action following the March 11, 2014 order of court. The court therefore concludes that wife's motion to correct APL Arrearages was properly granted, and the resulting credit in husband's favor is properly set at $19,153.31. Husband shall receive a dollar for dollar credit against wife's equitable distribution award for overpayments husband made to the office of domestic relations of Lawrence County.

Consistent with this opinion, the court will enter the following order of court:

## ORDER OF COURT

And now, this 14th day of April, 2014, with this matter being before the court for a hearing on plaintiff's petition for contempt, petition to compel/petition for special relief and motion to correct APL arrearages, with plaintiff, Kathleen A. Gabriel, appearing and being represented by Charles S. Cusick, Jr., and the defendant, Eugene W. Gabriel, appearing and being represented by with John J. Bongivengo, Esq., and consistent with the attached opinion, the court hereby orders and decrees as follows:

1. The record reflects that defendant/husband supplied plaintiff/wife with answers to interrogatories on March 21, 2014; plaintiff/wife used the answers to pursue her claims for special relief, counsel fees and contempt.

2. Therefore, plaintiff's petition for contempt is denied.

3. Plaintiff's petition to compel/petition for special relief is granted pursuant to the following provisions:

a. Defendant/husband shall immediately pay plaintiff/wife

counsel fees in the amount of $11,550.003 ($10,000.00 + $950.00, interest + $600.00 additional fees), with said amount being made payable directed to attorney Charles S. Cusick, Jr.

b. Defendant/husband shall immediately pay plaintiff/ wife the sum of $5,500.00 for the balanced owed to plaintiff/wife for her interest in the stock proceeds sold by defendant/husband after separation.

c. Defendant/husband shall immediately pay plaintiff/ wife the sum of $2,638.66 as an initial payment towards plaintiff's/wife's equitable distribution award.

d. Each month hereafter, defendant/husband shall provide plaintiff/wife with a monthly payment of $2,638.66 with said payment being due on the first of each month.

e. If defendant/husband is more than thirty (30) days late in any monthly payment to plaintiff/wife, plaintiff/ wife may request an attachment of defendant's/husband's 1099 ameriprise financial income.

4. This court's March 11, 2014 order granting plaintiff's/ wife's motion to correct APL arrearages is hereby sustained.

5. Defendant/husband shall pay to the Pennsylvania State Collection and Disbursement Unit the sum of $2,000.00 in alimony, with the first payment due immediately and monthly thereafter until an income attachment is implemented.

6. The domestic relations section of Lawrence County shall consider defendant/husband's overpayments in adjusting plaintiff/wife's monthly alimony award until the overpayments are absorbed into defendant's/husband's active alimony order.

---

3. The figure of $11,550.00 is based upon wife's original award for counsel fees $10,000.00; plus $950.00 interest; plus an additional award of $600.00 in counsel fees.

7. All prior orders of court, to the extent that they are not inconsistent with this order of court, shall remain in full force and effect.

8. The prothonotary shall properly serve a copy of this order of court upon counsel of record, and if a party is not represented by counsel, then upon that party at their last known address as contained in the court's file.