J-A22026-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PAUL ZIMMERMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JENNIFER KEGEL | : | No. 1561 MDA 2020 |

Appeal from the Order Entered November 17, 2020
In the Court of Common Pleas of York County Domestic Relations at
No(s): 1278-SA-2019,
PACSES 480117746

| | | |
|---|---|---|
| PAUL ZIMMERMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JENNIFER KEGEL | : | |
| | : | |
| Appellant | : | No. 51 MDA 2021 |

Appeal from the Order Entered November 17, 2020
In the Court of Common Pleas of York County Domestic Relations at
No(s): 01278 SA 2019,
PACSES 480117746

BEFORE: BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY OLSON, J.:                    **FILED MARCH 25, 2022**

Paul Zimmerman (Husband) and Jennifer Kegel (Wife) cross-appeal from the spousal support order entered on November 17, 2020. We affirm.

We briefly summarize the facts and procedural history of this case as follows. Husband and Wife married in 2005. They separated in 2019. On August 8, 2019, Husband filed a complaint for spousal support. After a

conference and the preparation of a recommendation by the Domestic Relations Office, the trial court entered a spousal support order on November 15, 2019, directing Wife to pay Husband $4,538.33 per month. Husband subsequently filed a petition for modification and a request for a *de novo* hearing. The trial court held four additional hearings between June 16, 2020 and November 13, 2020. Ultimately, on November 17, 2020, the trial court entered an order affirming its prior decision, noting two changes. First, the trial court recalculated Wife's gross annual income, determining that her gross annual salary for 2019 was $325,00.00. Next, the trial court determined that Husband was 30% disabled and assigned him an earning capacity of approximately $71,000.00 annually. Accordingly, the trial court ordered Wife to pay Husband $5,036.05 monthly, comprised of $4,578.05 for supposal support and $458.00 for arrears. On November 30, 2020, Husband filed a motion for reconsideration. The trial court denied relief by order entered on December 8, 2020. On December 8, 2020, Husband filed a petition to modify spousal support. The trial court did not rule on Husband's petition to modify before Husband filed a timely notice of appeal with this Court on December 16, 2020. Wife filed a cross-appeal on December 23, 2020.[1]

---

[1] The trial court ordered both Husband and Wife to file concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Both parties complied timely. On January 28, 2021, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a). On January 12, 2021, this Court issued a rule to show cause as to the appealability and finality of the order on appeal. Husband responded on January 21, 2021. Therein, Husband explained that
*(Footnote Continued Next Page)*

On appeal, Husband presents the following issues for our review:

1. Did the trial court err as a matter of law in failing to consider Wife's actual income from the date of filing to the date of the order?

2. As a result of failing to consider Wife's actual income, was the spousal support order calculated incorrectly?

Husband's Brief at 4.

In her cross-appeal, Wife asks us to consider:

I.    Did the trial court err and abuse its discretion in failing to conclude that the conduct of Husband towards Wife constituted indignities as defined by the Divorce Code which would defeat Husband's entitlement to spousal support?

II.   Did the trial court err and abuse its discretion in reaching its conclusion that Husband is disabled without the benefit of expert testimony while disregarding expert testimony presented by Wife that establishes that Husband is not disabled but[,] in fact[,] fully employable?

Wife's Brief at 11.

Although presented as two separate issues, Husband develops his claims in a single discussion in his appellate brief.  As such, we will address them together.  Husband initially "acknowledge[s] … that the initial conference in this matter was held on November 15, 2019[.]"  Husband's Brief at 12.  He claims, however, that at a *de novo* hearing before the trial court in July 2020,

---

he appealed the November 17, 2020 spousal support order filed in York County while the divorce complaint was filed in Lancaster County.  On January 22, 2021, this Court entered an order discharging the rule to show cause. ***See Asin v. Asin***, 690 A.2d 1229 (Pa. Super. 1997) (spousal support order entered in a different county from the divorce proceedings is not a companion to the divorce proceedings and, therefore, the spousal support order is immediately appealable).

Wife testified that she "received an additional payment of $46,133[.00] on February 14, 2020" which was "over and above her salary[.]" *Id.* at 13-14. Husband claims that at the conclusion of the November 13, 2020 hearing, he "attempted to call the issue to the [trial] court's attention regarding the computation of Wife's 2020 income." *Id.* at 14. Husband argues that the trial court erred when it calculated Wife's income based on her salary in 2019 and denied his request to compute support based upon Wife's 2020 income. The trial court reasoned that because Husband did not file a petition asking the court to consider Wife's 2020 income, Husband failed to plead new issues, and his request arose a year after filing for support because of numerous continuances at the parties' requests. *Id.*

Citing Pennsylvania Rule of Civil Procedure 1910.11, Husband maintains that the trial court, in reviewing the Domestic Relations Office's determinations *de novo*, needed to consider the parties' income tax returns and pay stubs "for the preceding six months at the time of the determination of [the parties'] earnings." *Id.* at 12. Husband posits that *de novo* review required the trial court to fully consider the facts anew and redecide the case. *Id.* at 13. He argues that "*de novo* means *de novo*, and the most recent information available to the [trial] court should have been utilized [in] calculating Wife's earnings as of November 13, 2020." *Id.* at 15. Husband claims the "solution [was] exceedingly simple" and the trial court should have "direct[ed] the Domestic Relations Office to utilize Wife's pay information

through the date of the [spousal support] order, and to recalculate the order based on her actual annual income for 2020." *Id.* at 16.

We adhere to the following standards:

> In Pennsylvania, an appellate court's standard of review in cases involving support matters is whether the trial court abused its discretion. An abuse of discretion exists when the judgment of the trial court is manifestly unreasonable or is the result of prejudice, bias or ill-will. While it is not an appellate court's duty to create the record or assess credibility, we must nevertheless examine the existing record to ascertain whether sufficient facts are present to support the trial court's order. If sufficient evidence exists in the record to substantiate the trial court's action, and the trial court has properly applied accurate case law to the relevant facts, then we must affirm.

*Hibbitts v. Hibbitts*, 749 A.2d 975, 976–977 (Pa. Super. 2000) (citations omitted); *see also Kimock v. Jones*, 47 A.3d 850, 854 (Pa. Super. 2012) ("When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order.").

This Court has stated:

> In construing the Rules of Civil Procedure, as the ultimate promulgator of said Rules, it is the intent of our Supreme Court that controls. In performing our task, we also look to the tools of statutory construction. In analyzing the intent of our Supreme Court, the best indication of said intent is the plain language of a rule. In pursuing that end, we are mindful that when the words of a rule are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. In addition, words and phrases shall be construed according to rules

of grammar and according to their common and approved usage while any words or phrases that have acquired a peculiar and appropriate meaning must be construed according to that meaning. Also, we presume that our Supreme Court does not intend a result that is absurd, impossible of execution or unreasonable.

***Horwath v. DiGrazio***, 142 A.3d 877, 880 (Pa. Super. 2016) (internal citations, quotations, and brackets omitted).

Pennsylvania Rule of Civil Procedure 1910.11 pertains to "office conference[s]." Pa.R.Civ.P. 1910.11. It provides that "[a] conference officer shall conduct the office conference." Pa.R.Civ.P. 1910.11(a)(1). "**At the conference, the parties shall provide the conference officer**[,]" *inter alia*, "the most recently filed individual federal income tax returns, including all schedules, W-2s, and 1099s" and "pay stubs for the preceding six months[.]" Pa.R.Civ.P. 1910.11(c) (emphasis added). Thereafter, Rule 1910.11 provides, in pertinent part:

**(d) Conference Officer Recommendation.**

(1) The conference officer shall calculate and recommend a guideline support amount to the parties.

(2) If the parties agree on a support amount at the conference, the conference officer shall:

   (i) prepare a written order consistent with the parties' agreement and substantially in the form set forth in Pa.R.C.P. No. 1910.27(e), which the parties shall sign; and

   (ii) submit to the court the written order along with the conference officer's recommendation for approval or disapproval.

   (iii) The court may enter the order in accordance with the agreement without hearing from the parties.

\* \* \*

(e) At the conclusion of the conference or not later than 10 days after the conference, the conference officer shall prepare a conference summary and furnish copies to the court and to both parties. The conference summary shall state:

(1) the facts upon which the parties agree;

(2) the contentions of the parties with respect to facts upon which they disagree; and

(3) the conference officer's recommendation; if any, of

(i) the amount of support and by and for whom the support shall be paid; and

(ii) the effective date of any order.

(f) If an agreement for support is not reached at the conference, the court, without hearing the parties, shall enter an interim order calculated in accordance with the guidelines and substantially in the form set forth in Rule 1910.27(e). Each party shall be provided, either in person at the time of the conference or by mail, with a copy of the interim order and written notice that any party may, within twenty days after the date of receipt or the date of the mailing of the interim order, whichever occurs first, file a written demand with the domestic relations section for a hearing before the court.

(g) A demand for a hearing before the court shall not stay the interim order entered under subdivision (f) unless the court so directs.

\* \* \*

(i) If a demand is filed, there shall be a hearing *de novo* before the court. The domestic relations section shall schedule the hearing and give notice to the parties. The court shall hear the case and enter a final order substantially in the form set forth in Rule 1910.27(e) within sixty days from the date of the written demand for hearing.

\* \* \*

(k) No motion for post-trial relief may be filed to the final order of support.

Pa.R.C.P. No. 1910.11(d)-(k).

Here, Rule 1910.11 clearly states that the parties are to provide information pertaining to their income for the six months preceding the initial hearing before the conference officer. The purpose of this disclosure is to enable the conference officer to calculate a guideline support amount and an order, recommendation, or conference summary, as necessitated by the circumstances. The plain language of the Rule does not require the **trial court** to examine the parties' income for the six-month period preceding its *de novo* determination of the parties' earnings and support obligations, as Husband suggests. Nor does Rule 1910.11 provide a procedural mechanism for producing or considering new additional evidence after income evidence has already been received by the conference officer and he or she has made a recommendation to the trial court. Accordingly, upon review, we conclude that the plain language of Rule 1910.11 does not require the trial court to consider changes in party income after the conference officer makes his or her support calculation recommendation to the trial court.

Moreover, in this case, the trial court determined that "Husband's counsel waited until the end of the final hearing, November 13, 2020, after the [trial c]ourt announced its findings to request … consider[ation of] Wife's 2020 income." Trial Court Opinion, 1/28/2021, at 6. The trial court explained that, because more than a year transpired since Husband filed his complaint for support, a petition to modify spousal support was the appropriate avenue

for requesting additional support due to an alleged change in Wife's income for 2020.

Initially we note that, upon review, the transcripts of the four *de novo* hearings are not contained in the certified record. The responsibility rests upon Husband to ensure that the record certified on appeal is complete and contains all of the materials necessary for the reviewing court to perform its duty.[2] **Commonwealth v. Kleinicke**, 895 A.2d 562, 575 (Pa. Super. 2006) (*en banc*).

Furthermore, we reject Husband's reliance upon this Court's decision in **Capuano v. Capuano**, 823 A.2d 995 (Pa. Super. 2003). **See** Husband's Brief at 12-13. In **Capuano**, the husband was granted a *de novo* hearing from the conference officer's decision regarding his earning capacity. At the *de novo* hearing,

> [the husband,] an air freight salesman, argued that although he previously held a higher paying job, he subsequently lost this job due to circumstances beyond his control. He contended that due

---

[2] Wife included the transcripts from the *de novo* hearings in her reproduced record filed with this Court. Regardless, because materials within reproduced records are *de hors* the record, we are generally precluded from considering them. **Ruspi v. Glatz**, 69 A.3d 680, 690–691 (Pa. Super. 2013) (internal citations omitted). However, this Court may also submit an informal inquiry to the trial court when there are indications in the record that a transcript exists, but mistakenly was not included in the certified record. **See Commonwealth v. Preston**, 904 A.2d 1, 7–8 (Pa. Super. 2006). Here, in the interest of time and judicial resources, instead of making an inquiry with the trial court, we examined the transcripts from all four *de novo* hearings that were included in Wife's reproduced record. Husband did not raise the issue pertaining to Wife's 2020 income until after the trial court announced its support decision in open court. **See** N.T., 11/13/2020, at 91-92.

to the September 11, 2001 terrorist attacks, the business of the air freight industry was adversely affected and as such, he was unable to secure a job that pays as much as he previously earned. When [the husband's] counsel sought to introduce testimony and other evidence, the trial court prevented him from doing so.

*Capuano*, 823 A.2d at 997. After examining the Rules of Civil Procedure, the *Capuano* Court determined that a *de novo* hearing requires "full consideration of the case anew" and "that at a *de novo* hearing in support cases, parties must be permitted to present evidence in support of their respective positions." *Id.* at 1003. As such, we concluded that "[t]he trial court's decision to preclude [the introduction of new] evidence at the [] *de novo* hearing constitute[d] reversible error." *Id.*

Here, citing the notes of testimony from the July 23, 2020 *de novo* hearing, Husband concedes that "evidence was introduced [] indicating that Wife received an additional payment of $46,133[.00] on February 14, 2020" and that "Wife acknowledged in her testimony that she received additional compensation over and above her $325,000[.00] salary on a quarterly basis which began after one year of employment." *Id.* at 13-14. Husband asserts that at the conclusion of the final *de novo* hearing on November 13, 2020 "counsel attempted to call the issue to the court's attention regarding the computation of Wife's 2020 income." *Id.* at 14. Furthermore, Husband claims that "Wife's final paystub of 2020 was obtained subsequent to the conclusion of the proceedings below, and demonstrates a gross income for the year in the amount of $491,800.96, a significant departure [from] the [$325,000.00] income utilized by the court to set the support order[.]" *Id.* at 10. Husband

includes Wife's 2020 paystub "in the reproduced record for information purposes only." *Id.*

In this case, unlike the scenario presented in *Capuano*, the trial court herein did not preclude the parties from presenting new evidence at the *de novo* hearing. In fact, Wife testified to a change in her 2020 income. Thus, the trial court heard this evidence but concluded that it would not consider it. Instead, the trial court noted that it "held a total of four hearings per the parties' request which further delayed any findings for Wife's or Husband's 2019 income" and neither party filed "any type of petition seeking [] consider[ation of] spousal income for 2020" until after the trial court ruled. Trial Court Opinion, 1/28/2021, at 6. Upon review of the record, Husband did not seek a continuance or specifically request discovery regarding Wife's 2020 income at any of the four *de novo* hearings. Instead, Husband waited until the end of the fourth hearing, after the trial court already valued Wife's 2019 annual income at $325,000.00, to argue that the trial court should have considered Wife's 2020 income. *See* N.T., 11/13/2020, at 89-91 ("[Wife's] income is [] a good bit more than 325,000[.00] and [] that information made its way into the record because of some distribution she has received throughout 2020 [] in excess of her base salary of $325,000[.00]."). In this matter, it is clear that the trial court did not preclude Husband from presenting evidence of Wife's 2020 income. While Husband complains that he was barred from introducing evidence of Wife's 2020 income, his claim actually asserts that the trial court erred in according that evidence proper weight and

sufficient persuasive value. As such, we conclude Husband's reliance on *Capuano* is misplaced. Finally, we are precluded from considering Wife's 2020 paystub on appeal merely because Husband has attached it to the reproduced record. *See Ruspi*, 69 A.3d at 690–691. Given the amount awarded to Husband as spousal support, as well as other attendant circumstances in this case, we are not convinced the trial court's decision was manifestly unreasonable or an abuse of discretion.

Moreover, "[a]n award of support, once in effect, may be modified *via* petition at any time, provided that the petitioning party demonstrates a material and substantial change in their circumstances warranting a modification." *Plunkard v. McConnell*, 962 A.2d 1227, 1229 (Pa. Super. 2008) (citations omitted). Lastly, while Husband filed a petition to modify following the trial court's decision in this matter, the trial court did not rule on it prior to Husband filing a notice of appeal with this Court. Generally, the trial court is divested of jurisdiction after an appeal is taken and "may no longer proceed [substantively] in the matter." Pa.R.A.P. 1701(a).

Based upon all of the foregoing, Husband did not properly ensure that the certified record was complete for our review and, thus, we cannot review his claim that the trial court failed to consider evidence of Wife's 2020 income. Moreover, the trial court determined (and this Court confirmed upon review of the transcripts contained in Wife's reproduced record) that Husband did not raise Wife's 2020 income until after the conclusion of four *de novo* hearings, but that the evidence he claims was precluded was nonetheless before the

trial court. Regardless, Rule 1910.11 directs that a conference officer consider the parties' income based upon the parties' federal tax returns and income records for six-months preceding the conference hearing. Upon review of the record, the conference officer complied with Rule 1910.11 and Husband does not suggest otherwise. Moreover, Husband's proposal that the trial court was required to consider income evidence that was not presented to the conference officer, and only emerged after the six-month look back period, lacks legal support. Accordingly, we conclude the trial court did not abuse its discretion in failing to consider Wife's 2020 income and properly determined that a petition to modify support is the proper procedure for Husband's claim. As such, Husband's appellate issues lack merit.

Next, we turn to Wife's cross-appeal. In her first issue presented, Wife "maintains that the trial court erred in concluding that the course of conduct by Husband towards Wife during the marriage did not constitute indignities[, which] defeat Husband's claim for spousal support." Wife's Brief at 18. Wife contends that "[f]or the [trial] court to find that Wife regularly drinking [one] to [two] glasses of wine in the privacy of her own home equates with the ridicule inflicted on Wife by her Husband's repeated incidents of public drunkenness and criminal arrest for DUI during the marriage is a gross misapplication of the law." *Id.* at 24. Instead, she contends "[t]he indignities forced upon Wife went far beyond his egregious alcohol consumption and resulted in Wife having thoughts of suicide" and "led to her request for the divorce." *Id.* at 21. Furthermore, Wife claims "[t]he [t]rial [c]ourt incorrectly

focused solely on the issue of Husband's alcohol use and completely ignored all other indignity grounds presented by Wife." *Id.* at 18. More specifically, Wife posits that she presented evidence that Husband lacked steady employment, but still refused to perform household duties, neglected and mistreated Wife and Wife's biological daughter whom Husband adopted, and was habitually absent from the marital home. *Id.* at 21-24. As such, Wife claims the trial court erred by determining Husband was entitled to spousal support. *Id.* at 26.

Again, as previous stated, we review a decision for spousal support for an abuse of discretion. This Court has previously determined:

> The law pertaining to spousal support in Pennsylvania is clear: "Married persons are liable for the support of each other according to their respective abilities to provide support as provided by law." 23 Pa.C.S.A. § 4321(1). A long recognized exception to the obligation to pay spousal support exists where the recipient spouse conducts him or herself in a manner that would constitute grounds for a fault-based divorce. *See, e.g., Hoffman v. Hoffman*, 762 A.2d 766, 770 (Pa. Super. 2000) (*en banc*); *Commonwealth ex rel. Brobst v. Brobst*, 96 A.2d 194, 195 (Pa. Super. 1953). Pursuant to the Divorce Code, a fault-based divorce may be granted to the "innocent and injured spouse" where the other spouse has:
>
> > (1) Committed willful and malicious desertion, and absence from the habitation of the injured and innocent spouse, without a reasonable cause, for the period of one or more years.
> >
> > (2) Committed adultery.
> >
> > (3) By cruel and barbarous treatment, endangered the life or health of the injured and innocent spouse.
> >
> > (4) Knowingly entered into a bigamous marriage while a former marriage is still subsisting.

> (5) Been sentenced to imprisonment for a term of two or more years upon conviction of having committed a crime.
>
> (6) Offered such indignities to the innocent and injured spouse as to render that spouse's condition intolerable and life burdensome.

23 Pa.C.S.A. § 3301(a).

**_S.M.C. v. W.P.C._**, 44 A.3d 1181, 1185 (Pa. Super. 2012) (footnote omitted).

> Moreover, this Court has stated:
>
> To make out a charge of indignities, three elements must be proved: (1) a course of conduct that, although varying according to the circumstances of each case, must in every case (2) be inconsistent with the marital relationship, and (3) render the condition of the innocent party intolerable and his or her life burdensome.
>
> Although no general rule can be formulated as to what constitutes indignities in a particular case, the matter being one that depends upon all the circumstances of the particular case and the position in life, character, and disposition of the parties, our cases hold that proof of vulgarities, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, or malignant ridicule may be sufficient to make out a case for divorce based on indignities.  Moreover, several of these factors may coalesce to justify a finding of indignities, although taken separately, no single incident or factor would be sufficient. Finally, it should be noted [] the burden of proving indignities [is] on [] the party seeking the divorce, and [they are] required to prove that [they were] an innocent and injured spouse.

**_Keller v. Keller_**, 419 A.2d 49, 51 (Pa. Super. 1980) (internal citations and quotations omitted).   "It is axiomatic that where both parties are nearly equally at fault, so that neither can clearly be said to be the injured and innocent spouse, the law will grant a divorce to neither on the ground of indignities to the person, but will leave them where they put themselves." **_Id._** (internal citation and quotations omitted).

- 15 -

Furthermore, while we are required "to make an independent study of the record" regarding alleged indignities, "[i]n matters of credibility, however, the [trial] court's judgment is entitled to great weight as it is the [trial] court which has had the opportunity to observe the witnesses, their demeanor and inflection, and is thus in a better position than the reviewing court to settle the questions on that issue." *Steinke v. Steinke*, 357 A.2d 674, 676 (Pa. Super. 1975) (citations omitted); *see also Isralsky v. Isralsky*, 824 A.2d 1178, 1190 (Pa. Super. 2003) (citation omitted) ("It is important to remember that this Court is not free to usurp the trial court's duty as the finder of fact.").

Here, the trial court determined that it "was not convinced that Husband had in fact committed [] indignities." Trial Court Opinion, 1/28/2021, at 9; *see also id.* at 11-12 ("Moreover, [the trial court] was not convinced that Wife was not the creation of her own alleged misery."). More specifically, the trial court determined that Wife's allegations of indignities, as set forth in detail above, "large[ly] stemmed from [Husband's] drunkenness." *Id.* Hence, after listening to the testimony of both parties and examining the evidence presented, the trial court concluded "that if Husband had committed the indignity of drunkenness, which was pled as the underlying cause of Wife's complaints, then Wife had also committed the same indignities, mainly drunkenness, if not more egregiously than Husband." *Id.* As the trial court explained, Wife testified to drinking "two generous pours of wine in the evenings on a daily or near daily basis" and admitted that she needed to stop drinking alcohol during the week because it was not good for her. *Id.* at 10.

Moreover, using an exhibit showing bank statement purchases, Husband explained that he made approximately 25 purchases of three to four bottles of wine for Wife over a two-year period. *Id.* at 11. Accordingly, the trial court found that "[g]iven both spouses testimony as to Wife's alcohol habits, Wife could not establish that she was an innocent, injured spouse." *Id.*

Based upon our review of the record and standard of review, we discern no abuse of discretion in determining that Wife failed to prove indignities in order to defeat Husband's claim for spousal support. Here, the trial court did not find Wife credible, and we will not usurp this determination. The record shows that both parties were nearly equally at fault, so that neither can clearly be said to be the injured and innocent spouse. Accordingly, Wife failed to prove her burden that she was not innocent and her first issue is without merit.

In her second issue presented, Wife claims that the trial court erred and abused its discretion by concluding, in the absence of expert testimony offered by Husband, that Husband was disabled. Wife's Brief at 27. Wife adds that the trial court improperly disregarded expert testimony she offered which showed that Husband "is fully employable as an experienced attorney without limitation." *Id.*

This Court previously determined that expert testimony is not required to prove a disability when calculating income for spousal support purposes. An *en banc* panel of this Court concluded that while expert medical testimony to verify a physical disability in spousal support disputes presents "a stronger

case," it is within the fact-finder's province to observe the witness and to accept testimony as to physical complaints, employment experience, and training to determine whether a person is able to support himself through appropriate employment. *See Remick v. Remick*, 456 A.2d 163, 167 (Pa. Super. 1983) (*en banc*). As such, we reject Wife's claim that Husband was required to provide expert evidence of his disability. Moreover, the trial court determined that Wife's own expert, a clinical neuropsychologist, conceded that Husband suffered from some cognitive deficits which actually supported Husband's claim of disability. Trial Court Opinion, 1/28/2021, at 13. "We observe that the weight to be accorded to an expert's testimony is for the fact-finder." *Gaydos v. Gaydos*, 693 A.2d 1368, 1377 (Pa. Super. 1997). The trial court ultimately concluded that the expert testimony Wife proffered "both admit[ted] and conclude[ed] that Husband had some sort of medical disability." Trial Court Opinion, 1/28/2021, at 14. We agree with the trial court's assessment and conclude that there was no abuse of discretion or error of law in finding Husband partially disabled when calculating spousal support. For all of the foregoing reasons, Wife is not entitled to relief on her final appellate claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>03/25/2022</u>